McCOMB, WAGE AND HOUR ADMINISTRATOR, *v.* JACKSONVILLE PAPER CO. ET AL.

No. 110.    Argued December 14–15, 1948.—Decided February 14, 1949.

---

[17] Bureau Letter, dated May 13, 1933 (symbols MT: ST: BHF) (333 C. C. H. ¶ 6266), 4 C. C. H. Standard Federal Tax Reporter ¶ 2633G .175 (1949).

*Bessie Margolin* argued the cause for petitioner. With her on the brief were *Solicitor General Perlman, Robert L. Stern* and *William S. Tyson.*

*Louis Kurz* argued the cause and filed a brief for respondents.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This is a civil contempt proceeding arising out of *Walling* v. *Jacksonville Paper Co.,* 317 U. S. 564, which we decided January 18, 1943. The District Court had held that none of respondents' employees in specified classes were covered by the Fair Labor Standards Act. 52 Stat. 1060, 29 U. S. C. § 201. We sustained a judgment of the United States Court of Appeals which reversed the District Court, modifying it slightly to include a larger class of employees than the United States Court of Appeals had held to be covered.

On remand the District Court, without a further hearing, entered a decree enjoining respondents from violating the Act in any of the following particulars: (1) by paying the designated classes of employees less than 30¢ an hour from the date of the judgment to October 24, 1945, or less than 40¢ an hour thereafter, except as permitted by orders of the Administrator under § 8 or § 14 of the Act; (2) by employing such employees for a workweek longer than 40 hours unless they receive compensation for employment in excess of 40 hours in the workweek at a rate not less than one and one-half times the regular rate at which they are employed; and (3) by failing to keep and preserve records as prescribed by the Administrator, particularly records of the hours worked each workday and each workweek by each of the employees and of the total wages paid to each for each workweek.

Respondent took no appeal from this order. This was in 1943. In 1946 the Administrator instituted this contempt proceeding alleging that respondents had not complied with the minimum wage, overtime, and record-keeping provisions of the judgment in many specified respects. He prayed that respondents be required to ter-

minate their continuing violations and in order to purge themselves of their contempts to make payment of the amounts of unpaid wages due the affected employees. The District Court found violations of the provisions of the decree. It found that (1) respondents had set up a completely false and fictitious method of computing compensation without regard to the hours actually worked which were unlawful under the Act; (2) respondents had adopted a plan which gave the employees a wage increase in the guise of a bonus and yet excluded that increase from the regular rate of pay for the purpose of computing overtime; (3) respondents had classified some employees as executive or administrative employees in plain violation of the regulations of the Administrator adopted under § 13 (a) (1) of the Act; and (4) one of the respondents had employed pieceworkers in excess of the maximum workweek without paying them overtime compensation.[1]

The District Court held that a civil contempt required a "wilful" violation of a decree; and that there was in this case no showing of any "wilful" violation of any "specific" provision of the former decree "prohibiting the doing of any specific thing." The District Court further held that it had no power on the application of the Administrator to enforce compliance with its former decree by ordering the payment of unpaid statutory wages. It accordingly considered the application of the Administrator as an amended complaint seeking a broadening of the previous decree and entered such an injunction. 69 F. Supp. 599.

All parties appealed. The United States Court of Appeals affirmed the judgment. It ruled that respond-

---

[1] It also found violations of the record-keeping provisions of the decree, some of which it held to be trivial and others of which had been discontinued.

ents had violated the provisions of the decree couched in terms of the Act in the respects found by the District Court. It also held that the District Court was warranted in concluding that there was no "wilful contempt" since neither the law nor the injunction specifically referred to or condemned the practices which were found to violate the Act. 167 F. 2d 448.

The case is here on a petition for a writ of certiorari which we granted because of the importance of the problem in the administration of the Act.

*First.* The absence of wilfulness does not relieve from civil contempt. Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance. See *United States* v. *United Mine Workers,* 330 U. S. 258, 303–304; *Penfield Co.* v. *Securities & Exchange Commission,* 330 U. S. 585, 590; *Maggio* v. *Zeitz,* 333 U. S. 56, 68. Since the purpose is remedial, it matters not with what intent the defendant did the prohibited act.[2] The decree was not fashioned so as to grant or withhold its benefits dependent on the state of mind of respondents. It laid on them a duty to obey specified provisions of the statute. An act does not cease to be a violation of a law and of a decree merely because it may have been done innocently. The force and vitality of judicial decrees derive from more robust sanctions. And the grant or withholding of remedial relief is not wholly discretionary with the judge, as Mr. Justice Brandeis wrote for a unanimous Court in *Union Tool Co.* v. *Wilson,* 259 U. S. 107, 111–112. The private or public rights that the decree sought to protect are an important measure of the remedy.

*Second.* As we have noted, the decree directed respondents to obey the provisions of the Act dealing with mini-

[2] See 2 High on Injunctions (4th ed., 1905) §§ 1416 *et seq.*

mum wages, overtime, and the keeping of records. There was no appeal from it. By its terms it enjoined any practices which were violations of those statutory provisions. Decrees of that generality are often necessary to prevent further violations where a proclivity for unlawful conduct has been shown. See *May Stores Co.* v. *Labor Board,* 326 U. S. 376, 390, 391; *United States* v. *Crescent Amusement Co.,* 323 U. S. 173, 186. Respondents' record of continuing and persistent violations of the Act would indicate that that kind of a decree was wholly warranted in this case. Yet if there were extenuating circumstances or if the decree was too burdensome in operation, there was a method of relief apart from an appeal. Respondents could have petitioned the District Court for a modification, clarification or construction of the order. See *Regal Knitwear Co.* v. *Labor Board,* 324 U. S. 9, 15. But respondents did not take that course either. They undertook to make their own determination of what the decree meant. They knew they acted at their peril. For they were alerted by the decree against any violation of specified provisions of the Act.

It does not lie in their mouths to say that they have an immunity from civil contempt because the plan or scheme which they adopted was not specifically enjoined. Such a rule would give tremendous impetus to the program of experimentation with disobedience of the law which we condemned in *Maggio* v. *Zeitz, supra,* at 69. The instant case is an excellent illustration of how it could operate to prevent accountability for persistent contumacy. Civil contempt is avoided today by showing that the specific plan adopted by respondents was not enjoined. Hence a new decree is entered enjoining that particular plan. Thereafter the defendants work out a plan that was not specifically enjoined. Immunity is once more obtained because the new plan was not spe-

cifically enjoined. And so a whole series of wrongs is perpetrated and a decree of enforcement goes for naught.

That result not only proclaims the necessity of decrees that are not so narrow as to invite easy evasion; it also emphasizes the danger in the attitude expressed by the courts below that the remedial benefits of a decree will be withheld where the precise arrangement worked out to discharge the duty to pay which both the statute and the decree imposed was not specifically enjoined.

We need not impeach the findings of the lower courts that respondents had no purpose to evade the decree, in order to hold that their violations of it warrant the imposition of sanctions. They took a calculated risk when under the threat of contempt they adopted measures designed to avoid the legal consequences of the Act. Respondents are not unwitting victims of the law. Having been caught in its toils, they were endeavoring to extricate themselves. They knew full well the risk of crossing the forbidden line. Accordingly where as here the aim is remedial and not punitive, there can be no complaint that the burden of any uncertainty in the decree is on respondents' shoulders.

*Third.* We have no doubts concerning the power of the District Court to order respondents, in order to purge themselves of contempt, to pay the damages caused by their violations of the decree. We can lay to one side the question whether the Administrator, when suing to restrain violations of the Act, is entitled to a decree of restitution for unpaid wages. Cf. *Porter* v. *Warner Holding Co.*, 328 U. S. 395. We are dealing here with the power of a court to grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts, such as the produc-

tion of books. *Penfield Co.* v. *Securities & Exchange Commission, supra.* They may also require the payment of money as in the alimony cases. See *Gompers* v. *Bucks S. & R. Co.,* 221 U. S. 418, 442; *Oriel* v. *Russell,* 278 U. S. 358, 364–365.

The decree that was violated in the present case relates to the payment of wages and overtime pay required by §§ 6 and 7 of the Act. It does not, however, compute the weekly and monthly amount that is due each employee under the correct construction of the Act. Nor does it contain the names of the payees. But it provides the formula by which the amounts can be simply computed. If it had gone one step further and made the computation, listing the amounts due each employee, the case would then be on all fours with the alimony cases. Yet the circumstance that changing payrolls and fluctuating rates of pay make that impractical in this type of case does not mark a material difference.

The direction of the court was that respondents make payments of wages to their employees pursuant to a prescribed formula. If the court is powerless to require the prescribed payments to be made, it has lost the most effective sanction for its decree and a premium has been placed on violations. The fact that another suit might be brought to collect the payments [3] is, of course, immaterial. For the court need not sit supinely by waiting for some litigant to take the initiative. Vindication of its authority through enforcement of its decree does not depend on such whimsical or fortuitous circumstances. The fact that the Administrator is the complainant [4] and that the back wages go to the employees is not material. It is

---

[3] Section 16 (b) authorizes suits by employees to recover wages and overtime unlawfully withheld.

[4] It is the Administrator who is directed and authorized by § 11 (a) of the Act to bring actions to restrain violations of the Act of the

the power of the court with which we are dealing—the power of the court to enforce compliance with the injunction which the Act authorizes,[5] which the court has issued, and which respondents have long disobeyed.

*Reversed.*

MR. JUSTICE RUTLEDGE concurs in the result.

MR. JUSTICE FRANKFURTER, with whom MR. JUSTICE JACKSON concurs, dissenting.

Obedience must of course be secured for the command of a court. To secure such obedience is the function of a proceeding for contempt. But courts should be explicit and precise in their commands and should only then be strict in exacting compliance. To be both strict and indefinite is a kind of judicial tyranny.

In such a case as this, only after an administrative order has been formulated and a court has adjudicated that the order is within the administrator's statutory authority does the command of a court come into existence, disobedience of which may be punished as contempt. For violation of the Fair Labor Standards Act as such, one may be made to suffer civil penalties or imprisonment, but the latter only after conviction by a jury. For violation of the command of an injunction issued under the Act, however, he may not only be exposed to more severe civil penalties than the Act by its own terms imposes, but made to suffer imprisonment without benefit of jury trial. It is for such reasons that this Court has indicated again and again that a statute cannot properly be made the basis of contempt proceedings merely by incorporat-

character involved here. Cf. *Inland Steel Co.* v. *United States,* 306 U. S. 153, 157; *United States* v. *Morgan,* 307 U. S. 183, 193–194; *Commission* v. *Brashear Lines,* 312 U. S. 621, 628–630.

[5] See § 17.

ing a reference to its broad terms into a court order. See,
*e. g., Swift & Co.* v. *United States,* 196 U. S. 375, 396;
*New York, N. H. & H. R. Co.* v. *Interstate Commerce
Comm'n,* 200 U. S. 361, 404; *Labor Board* v. *Express
Publishing Company,* 312 U. S. 426, 435. These consid-
erations become increasingly important as there is in-
creasing use of injunctions for the enforcement of admin-
istrative orders and statutory duties.

These are general principles but their application gov-
erned the decisions of the District Court and of the Court
of Appeals; they should control the decision here. The
two lower courts found that while the practices now
complained of by the Administrator of the Wage and
Hour Division of the Department of Labor constituted
violations of the Fair Labor Standards Act, they were
not on any fair consideration covered by the injunc-
tion, contempt of which is now charged. The injunction
underlying this proceeding takes eight pages of a printed
record and particularizes in great detail the violations
which were enjoined. It also contains omnibus clauses
prohibiting violations of the Fair Labor Standards Act.
On full consideration, the District Court treated the ap-
plication for an adjudication of civil contempt "as an
amended complaint seeking a broadening of the injunc-
tive orders heretofore entered in this case, and will enter
an amended judgment enjoining defendants from violat-
ing the provisions of the Fair Labor Standards Act as
adjudicated in this Memorandum Opinion." 69 F. Supp.
599, 608. The Court of Appeals agreed with this view
of the District Court (with a minor modification not
here relevant). 167 F. 2d 448. In short, both courts
found no contempt. They did so because there was
lacking that clearness of command in the court's order
which warranted a finding of its disobedience, if due re-
gard were paid to the proper construction of the injunction
as the starting point of the contempt proceedings. At

the least, such was a warrantable interpretation of the circumstances of this case, and we are disentitled to set our interpretation against theirs.

In reversing the conclusion of the two lower courts that there was no contempt because there was no disobedience of the injunction, the Court is rendering a decision of far-reaching import to the law of injunctions. Today's ruling happens to concern an injunction against an employer. Tomorrow it may be an injunction against employees, as it was yesterday and too often in the past. One of the grievances which led to the Norris-LaGuardia Act was the generality of the terms of labor injunctions. Ambiguity lurks in generality and may thus become an instrument of severity. Behind the vague inclusiveness of an injunction like the one before us is the hazard of retrospective interpretation as the basis of punishment through contempt proceedings. The two lower courts, in finding that generally to enjoin obedience to a law is too vague a foundation for proceedings in contempt, were avoiding the very evil with which labor injunctions were justly charged. And of course it is not to be assumed that the allowable vagueness of an injunction varies with the use to which the injunction is put. This Court ought not to encourage injunctions couched in such indefinite terms by setting aside the findings of the courts below that the injunction did not forbid with explicitness sufficient to justify a finding of contempt.

I would affirm the judgment of the Court of Appeals.