The NATIONAL RESEARCH
BUREAU, INC., Plaintiff,

v.

Marvin H. KUCKER, Murray Shor, and
Paul Stolmaker, copartners, doing busi-
ness as Shopping Center Digest, De-
fendants.

78 Civ. 2878.

United States District Court,
S. D. New York.

May 17, 1979,
As Amended June 29, 1979.

McAulay, Fields, Fisher & Goldstein by Julius Fisher, New York City and Haight, Hofeldt, Davis & Jambor by Gomer W. Walters, and Jay G. Taylor, Chicago, Ill., of counsel, for plaintiff.

Cowan, Liebowitz & Latman by Roger L. Zissu, and Baila H. Celedonia, New York City, for defendants.

## OPINION AND ORDER

OWEN, District Judge.

The plaintiff, The National Research Bureau, Inc., is a publisher of many editions of a directory of shopping centers, which informs one of the locations thereof, the operators' names, and the principal stores. Defendants, a partnership of which Murray Shor is the active partner, publish a competing *Directory of Regional Malls.* Distribution of the First Edition of defendants' directory was preliminarily enjoined by order of July 7, 1978, which was not appealed. The pertinent portion of that order, the precise wording of which was worked out by counsel for both sides in conference with the court, is as follows:

ORDERED, that defendants . . . are preliminarily enjoined . . . from publishing, selling, marketing, offering for sale, commercially exhibiting or displaying, or otherwise disposing of any copies of defendants' book entitled *Directory of Regional Malls* dated 1977 . . . or any other book or publication . . . that includes or incorporates any portion of plaintiff's aforesaid copyrighted work, provided, that, nothing contained in this Preliminary Injunction shall prevent defendants from publishing any other book or directory of regional shopping centers where the data concerning such regional centers contained in any

such other directory has been compiled independently and has not been copied from any edition of plaintiff's book entitled *Directory of Shopping Centers in the United States* . . . .

■ Plaintiff now moves for an order finding defendants in contempt of the preliminary injunction arising from the publication and sale of defendants' Second Edition. Civil contempt is not a discretionary matter; if a court order has been violated, the court must make the injured party whole. *Vuitton et Fils S. A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir. 1979), *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949), *John B. Stetson Co. v. Stephen L. Stetson Co.,* 128 F.2d 981 (2d Cir. 1942).

Defendants' Second Edition contains some nine hundred listings. Of these, I find that some 400 violate the court's order. Five or six listings are concededly copied; 89 involve undisputed copying of just names and addresses from plaintiff; and roughly 300 are "slipped" from entries in defendants' now-enjoined First Edition, which entries had in turn been copied from plaintiff's then-current edition. "Slipping" is the act of one who takes a listing from another's copyrighted directory, and sends it to the listed party, merely asking that the information on the slip be confirmed or corrected.

Defendants contend that the 5 to 6 admittedly copied listings were inadvertent and in any event *de minimis;* that they had the right under the copyright law to copy the 89 names and addresses; that there is no doctrine in copyright law that "slipping," as defined above or as practiced in this case, constitutes infringement; and that the preliminary injunction did not clearly prohibit the conduct now alleged to be contemptuous.

■ There is no question, however, that the defendants' new work "includes or incorporates" substantial portions of plaintiff's work. Apart from such changes as the shopping centers made on the slips, the information in those 400 entries is in fact copied directly from plaintiff's work. This

constitutes a violation of the injunction. Defendants contend that the procedure followed does not violate the copyright law. However, the issue here is whether a court order has been violated, and it has. It may also be noted that "slipping" has been held to be a violation of the copyright law. *Sampson & Murdock Co. v. Seaver-Radford Co.,* 140 F. 539 (1st Cir. 1905), *Jeweler's Circular Publishing Co. v. Keystone Publishing Co.,* 281 F. 83 (2d Cir.), *cert. denied,* 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074 (1922).

Defendants contend that plaintiff's list of names and addresses of shopping centers has been placed in the public domain by the rental of such lists for mailing purposes without copyright notice. Thus in 1977 defendants, pursuant to written terms, rented from plaintiff a mailing list of shopping centers for a special promotion. This list was in the form of a computer print-out designed to be cut into individual labels and concurrently affixed to the mailing material by something called the Cheshire process. Once the Cheshire process is finished, there is nothing left in the renter's possession. After this action was commenced, defendants, this time by subterfuge, again obtained from plaintiff a similar list which, unknown to the employee who furnished it, was not intended to be rented. This print-out was provided at the behest of plaintiff Shor, who requested it under a fictitious name and represented that it was to be used for a mailing. It was not so used.

I conclude that such a sale of a set of mailing labels for one-time use, to the extent that it may be said to constitute dissemination of the underlying list at all, is in the nature of a "limited publication" for copyright purposes. 1 Nimmer on Copyrights § 4.13 [A]. This is defined as publication "to a definitely selected group and for a limited purpose, and without the right of diffusion, reproduction, distribution or sale." *White v. Kimmell,* 193 F.2d 744, 746–47 (9th Cir.), *cert. denied,* 343 U.S. 957, 72 S.Ct. 1052, 96 L.Ed. 1357 (1952). This test, I conclude, is met; a rental is not made beyond a group defined by the pur-

chaser as those intending to use the list for a mailing [1] and it is furnished for the limited purpose of that mailing alone. The rental was definitely not made on the assumption that the lessee could do whatever he wanted with it, including its use in a directly competing directory.

 That some of the copying may have been inadvertent is irrelevant in a civil contempt proceeding. *McComb, supra,* 336 U.S. at 191, 69 S.Ct. 497. And even if the copying were *de minimis,* which it manifestly is not, that would only go to the question of damages and not to the question of contempt or infringement. "[I]t is safe to say that the compiler of a general directory is not at liberty to copy any part, however small, of a previous directory, to save himself the trouble of collecting the materials from original sources." *List Publishing Co. v. Keller,* 30 F. 772, 773 (C.C.S.D.N.Y.1887); *Schroeder v. William Morrow & Co.,* 566 F.2d 3 (7th Cir. 1977).

 Finally, the alleged ambiguity of an order is no excuse. If an order *is* ambiguous, which this one does not appear to be, then a clarification should be sought *before* acts are performed in the ambiguous area. *McComb, supra,* 336 U.S. at 193, 69 S.Ct. 497. Nor can contempt be avoided by some literal or hypertechnical reading of an order. It is the spirit and purpose of an injunction, not merely its precise words, that must be obeyed. *John B. Stetson Co., supra,* 128 F.2d at 983. The purpose of this injunction, as well as the clear effect of its words, was the very purpose of the copyright laws: to prohibit defendants from depriving plaintiff of the fruits of its labor. *Jeweler's Circular Publishing Co., supra,* 281 F. at 95; see *Sampson & Murdock Co., supra,* 140 F. at 542–43.

 Both the letter and the spirit of this injunction have been violated. Accordingly, the defendants are in contempt and the remedy alone remains to be determined. "The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief. They may entail the doing of a variety of acts . . . . They may also require the payment of money . . . ." *McComb, supra,* 336 U.S. at 193–94, 69 S.Ct. at 500–501.

 Clearly, distribution of the Second Edition of defendants' directory has violated the court's prior injunction order, and thus further distribution is enjoined. Plaintiff has requested that defendants be required to recall all copies of their Second Edition already distributed. This appears impractical and I decline to order it. However, defendants are directed to account for such profits from the Second Edition as are attributable to the copied matter.[2] See 17 U.S.C. § 504(b), *Leman v. Krentler-Arnold, Hinge Last Co.,* 284 U.S. 448, 455–57, 52 S.Ct. 238, 241–42, 76 L.Ed. 389 (1932).

 Next, plaintiff is entitled to compensation for its expenses and attorneys' fees in prosecuting this motion. These may be awarded whenever the violation of the court's order is found to have been willful. *Vuitton et Fils S. A., supra,* 592 F.2d at 130–31. To justify such an award it surely suffices that the degree of willfulness I find involved here would have sustained a finding of criminal contempt.[3]

This same finding of willful misconduct renders it appropriate to grant further preliminary relief requested by plaintiff. Accordingly, all copies of the First and Second Editions of defendants' directory in their

---

1. Defendants concede that, on the evidence, one could infer that there was "an agreement that the list or labels would be used on a one-time-only basis." Defendants' First Closing Memorandum, p. 46. The very fact that there are such contracts is evidence of the selectivity of the "group" to which these lists are rented for such limited purposes.

2. The Magistrate to whom this issue will be referred may well find that without these 400

entries defendants' book would have been essentially worthless, in which case the entire profits should be awarded to plaintiff.

3. The requisite bad faith for a finding of criminal contempt exists when the contempt consists of "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *United States v. Seale,* 461 F.2d 345, 368 (7th Cir. 1972).

**616**

possession or control are to be impounded pursuant to 17 U.S.C. § 503 and its predecessor.

Other relief requested by the plaintiff is denied.

I refer the following issues to a Magistrate to hear and report: (1) the amount of defendants' profits derived from their contempt and infringement, and (2) the reasonable costs and attorneys' fees attributable to this motion.[4]

The foregoing is so ordered.

**4.** Upon receipt by the court of the report of the Magistrate pursuant to this reference, the court will entertain further briefing on the subject of the timing of payment to plaintiff of any amounts found due. Compare *United States v.* *United Mine Workers of America*, 330 U.S. 258, 304, 67 S.Ct. 677, 91 L.Ed. 884 (1947) with *Bethlehem Mines Corp. v. United Mine Workers of America*, 476 F.2d 860, 864–67 (3d Cir. 1973).