NASCO, INC.

v.

CALCASIEU TELEVISION & RADIO, INC., et al.

Civ. A. No. 83–2564.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Jan. 23, 1984.
Judgment March 23, 1984.

John B. Scofield, Lake Charles, La., for plaintiff.

A.J. Gray, Lake Charles, La., for defendants.

NAUMAN S. SCOTT, District Judge.

### RULING

This matter is before us on an Order to Show Cause why the respondents Calcasieu

Television & Radio, Inc. (hereinafter "CTR") and G. Russell Chambers should not be punished for contempt of court for failure to comply with a preliminary injunction. A hearing was held in open court on December 22, 1983. Upon consideration of the evidence adduced, the parties' briefs, and arguments of counsel, we dispose of this matter as follows:

## FINDINGS OF FACT

1. We entered a preliminary injunction on October 24, 1983, which, *inter alia,* restrained the respondents CTR and G. Russell Chambers from conveying or otherwise disposing of the television assets of KPLC–TV pending resolution of petitioner's suit for specific performance and damages. In relevant part, the order further provides as follows:

> "Defendants [CTR] and G. Russell Chambers, their agents, employees, servants, attorneys and all other persons in active concert and participation with them are also restrained and enjoined from prohibiting or otherwise interfering with the access by plaintiff and plaintiff's representatives, including its counsel, accountants and the appraiser selected by plaintiff, during normal business hours to the properties, contracts, leases, files, books of accounts or other records *related to the assets purchased* under the terms of the purchase agreement dated August 9, 1983, and the operation of television station KPLC–TV for purposes of examining same ... "

(Record at 3) (emphasis added).

2. Both counsel agree that petitioner's representatives were denied access to CTR's general ledger and 1982 income tax return by the respondents as set forth in the affidavit of plaintiff's counsel, John B. Scofield. (Contempt proceeding transcript, p. 3). This affidavit reads in pertinent part as follows:

> "Pursuant to NASCO, INC.'s contractual obligation to examine and inspect the records and books of [CTR], plaintiff, through appearer, contacted opposing counsel, A.J. Gray, III, on November 25,

1983, and requested that plaintiff be given permission to inspect certain records of the defendants, including the general ledger and 1982 income tax return of [CTR]. Appearer requested that this inspection be permitted to take place on Monday, November 21, 1983 at the offices of [CTR].

> "On November 18, 1983, at approximately 9:20 a.m., attorney A.J. Gray, III, representing both G. Russell Chambers and [CTR], telephoned appearer and advised that plaintiff would not be given permission to examine the records in question. Appearer then asked Mr. Gray if it would be necessary for plaintiff to have its representative appear at the television station in order that refusal of defendants to grant access could be demonstrated. Mr. Gray replied that this would not be necessary and that he would verify to the court that the permission had been denied. In this conversation, Mr. Gray made it clear that he had discussed plaintiff's request with Mr. Chambers and that Mr. Chambers had directed him to deny the request.

(Petitioner's Exhibit "A").

3. The general ledger is a record of all financial activity of CTR. It includes information which relates to the broadcast and non-broadcast properties and operations of CTR. Respondents have supplied excerpts which they believe relate to the "assets purchased" but refused to disclose the information related to the non-broadcasting properties.

4. The entire ledger is needed by petitioners to verify warranties of the seller have been fulfilled prior to their expiration on the date of closing. In addition, petitioner must be able to verify the accuracy of the information supplied thus far. The general ledger is the most important financial document which relates to the operation of the television station.

5. Respondent CTR's Director of Accounting, Miss Louviere, admitted that she had no idea what harm would result from petitioner's examination of the general ledger. She "presum[ed] Mr. Chambers

would [know]", but he did not appear or testify at the proceeding.

6. Respondent has produced books of contracts and other information in compliance with the injunction.

## CONCLUSIONS OF LAW

■ Federal law recognizes two types of contempt: civil and criminal. "Criminal contempt is punitive rather than remedial; it punishes disobedience of a court order as vindication of the court's authority". *Wolfe v. Coleman*, 681 F.2d 1302, 1306 (11th Cir.1982). Civil contempt, however, "is designed to coerce the contemnor to comply with a court order" and "is brought by a private party, not the court." *Id.* Even though the same conduct may result in both civil and criminal contempt charges, *Id.* at 1308, the nature of the proceeding is determined by its remedial or punitive purpose.

■ The instant proceeding was initiated by petitioner under a pleading styled "Petition for Rule to Show Cause Why Defendants G. Russell Chambers and [CTR] Should Not Be Punished For Contempt". Its purpose is to obtain coercive and compensatory relief; it is remedial rather than punitive. The action, therefore, is obviously one for civil contempt. See, *In Re Dinnan*, 625 F.2d 1146 (5th Cir.1980); *In Re Grand Jury Investigation*, 610 F.2d 202 (5th Cir.1980).

■ In a civil contempt proceeding, the petitioner bears the burden of proving that respondent violated some court order by clear and convincing evidence. *Louisiana Ed. Ass'n v. Richland Parish School Bd.*, 421 F.Supp. 973, *aff'd*, 585 F.2d 518 (5th Cir.1978). To establish a prima facie case, we believe petitioner must show: (1) That a court order is in effect; (2) That the order prescribes or requires certain conduct by the respondent; and (3) That respondent has performed an act or failed to perform an act in violation of the court's order. Petitioner need not show that the violation was willful. *McComb v. Jackson-*

*ville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 365 (1949).

■ Once petitioner has presented a prima facie case, the burden falls upon the respondent to assert defenses or mitigating circumstances that might cause the court to withhold the exercise of its contempt power. *Louisiana Ed. Ass'n, supra,* at 977. Where a legally sufficient defense is asserted, such as respondents' present inability to comply with the order, this burden is merely one of production rather than persuasion. *U.S. v. Rylander*, —— U.S. ——, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). However, where respondent offers a mitigating circumstance, such as good faith, it is our province to tailor sanctions in light of the circumstances offered. In all cases, however, the petitioner bears the burden of persuasion throughout the entire proceeding.

■ We find that plaintiff has proven a prima facie case of civil contempt by clear and convincing evidence. Undeniably, our Order of October 24, 1983 required respondents to permit petitioner and its representatives access to all books, records, accounts, etc., which relate to the assets purchased. The general ledger of CTR is certainly the most important record relating to the financial activity surrounding the assets purchased. It admittedly includes the most current and accurate record of the financial activity of the television station itself. Likewise, the 1982 IRS tax return is also a salient document relating to the assets purchased. The respondents expressly warranted that this tax liability was paid, and petitioner cannot be expected to waive any right pertaining to the satisfaction of that warranty without examining this tax return. It is also admitted by respondents that they denied petitioner access to these two records despite the preliminary injunction. Accordingly, we have little difficulty in finding that petitioner has proven a prima facie case of civil contempt by clear and convincing evidence.

Respondents assert that: (1) The Order contains *ambiguous* language and does not require disclosure of portions of the gener-

al ledger which relate to the non-broadcast properties of CTR; (2) They have acted in good faith by allowing plaintiff access to pertinent portions of the general ledger which they have determined are relevant to the assets purchased and have otherwise substantially complied with our order.

We believe, however, that these defenses and circumstances are insufficient to deny petitioner's rights under our Order. See *McComb, supra; Louisiana Ed. Ass'n, supra.* While it is clear that a respondents may assert their present inability to comply with the Order in question as a defense, *Rylander, supra,* we have found no cases, and none were cited by respondents, where a Federal Court recognized an ambiguity in its order as a legally sufficient defense to a charge of civil contempt. Rather, the cases indicate otherwise.

A party's compliance with a court order cannot be avoided by "a literal or hypertechnical reading of an order", for it is "the spirit and purpose of the injunction, not merely its precise words, that must be obeyed". *National Research Bureau, Inc. v. Kucker,* 481 F.Supp. 612, 615 (S.D.N.Y.1979). Moreover, we cannot say that the tax return and the general ledger, albeit containing some information unrelated to the assets purchased, do not fall within the language of our injunction as reasonably construed. See, *Alabama Nursing Home Ass'n v. Harris,* 617 F.2d 385 (5th Cir.1980). Even though an ambiguity exists, which may arguably be the case here, it is not excuse for the respondents to make an *ad hoc* interpretation to determine its meaning. Our Order must be obeyed and cannot be ignored unless it is withdrawn or vacated. *W.B. Grace Co. v. Local 759,* — U.S. —, 103 S.Ct. 2177, 76 L.Ed.2d 298, 307 (1983). In this instance, we believe that respondents had an *affirmative duty* to petition for a clarification, modification, or construction of the Order before performing acts in the ambiguous area. *National Research Bureau, supra* (citing *McComb, supra,* U.S. at 193, 69 S.Ct. at 500); see also *Regal Knitwear Co.*

*v. NLRB,* 324 U.S. 9, 15, 65 S.Ct. 478, 479, 89 L.Ed. 661 (1945). The respondents clearly made no attempt to pursue this course of action.

Instead, respondents unilaterally determined what the Order enjoined and what records fell within the ambit of our Order. Whether respondents acted upon advice of counsel is no defense to civil contempt. *S.E.C. v. First Financial Group of Texas,* 659 F.2d 660 (5th Cir. 1981). Conversely, counsel's devotion to his clients is no excuse for violation by an attorney of a Court Order. See, *Dunn v. United States,* 388 F.2d 511 (10th Cir.1968) (criminal contempt). Without having taken the proper steps, respondents "undertook to make their own determination of what the decree meant. They knew they acted at their peril". *McComb, supra,* at 193, 69 S.Ct. at 500. Thus, we find that any ambiguity in the language of our Order is not a legally sufficient defense to civil contempt. We believe that respondents total lack of diligence in attempting to erase any ambiguity leads us to discredit this circumstance in our assessment of the appropriate remedial and coercive relief due petitioner. See, *infra,* at 9–11.

We are also unpersuaded by respondents' assertion of their good faith efforts to achieve substantial compliance with our injunction. Although substantial compliance may be a defense here, see, e.g., *Washington Metropolitan Transit Authority v. Amalgamated Transit Union,* 531 F.2d 617, 621–22 (D.C.Cir.1976), and respondents have a right to prove a mitigating circumstance such as good faith, *Reed v. Rhodes,* 500 F.Supp. 363, 400 (N.D. Ohio 1980); see also, *Washington Metropolitan Transit Authority, supra,* we believe that respondents have not been "reasonably diligent and energetic in attempting to accomplish what was ordered". *Aspira of New York v. Bd. of Educ. of City of New York,* 423 F.Supp. 647, 654 (S.D.N.Y. 1976). In fact, respondents' conduct flies in the face of their bold assertion of good faith to achieve substantial compliance with our Order.

Respondents have engaged in a deliberate and calculated effort to defeat their obligations under the purchase agreement by extra-judicial means, having been informed that the matter would be lodged in a court for judicial determination. On October 17, 1983, when petitioner first sought to enjoin any transfer of the purchased assets, respondents' counsel was notified by telephone, whereupon he advised the court that he made no representations regarding the intentions of Mr. Chambers. Later, by the attorney's own admission, it became clear that he knew of material facts,* which he deliberately failed to disclose to the court, that significantly affected our objective to preserve the status quo. As a result, we were compelled to issue another injunction, thereby consuming more judicial energy and causing petitioners additional and unnecessary expense. In the instant proceeding, respondents have taken it upon themselves to interpret the very injunction which they earlier succeeded in evading. Counsel's conduct on October 17, 1983 may not be so reprehensible and indeed may be excusable, given the exigencies surrounding the instant legal dispute and counsel's duty to his client; however, the usurpation of our perogative to interpret and construe the injunction clearly demonstrates respondents' *bad faith* attempts to thwart the authority of this court. Thus, we find that respondents have not been reasonably diligent in attempting to comply with our Order, and that we certainly cannot find that respondents' "good faith" is sufficient as a mitigating circumstance under the facts adduced at trial in light of respondents' prior conduct.

In sum, petitioner has shown by clear and convincing evidence that respondents have violated our injunction by their refusal to grant petitioners access to CTR's general ledger and 1982 IRS income tax returns. Ambiguity in the order is no defense; it cannot be considered a mitigating circumstance under the facts at bar. Likewise, respondents have not been diligent in attempting to comply with our Order, and their assertion of good faith is not borne out by their conduct thusfar. Absent extraordinary circumstances, we cannot refuse to preserve rights under our Order. *Louisiana Ed. Ass'n, supra,* at 975. Accordingly, we find the respondents CTR and G. Russell Chambers in contempt of this court for violation of our Preliminary Injunction of October 24, 1983.

### PUNISHMENT

The sanctions imposed for civil contempt may be remedial or coercive but not penal. *Florida Steel Corp. v. NLRB,* 648 F.2d 233 (5th Cir.1981). A fine may be appropriate for either or both of two purposes: (1) To compensate petitioner for actual damages shown; (2) To compel contempnor to comply with a court order. *United States v. United States Mine Workers,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *In Re Drinnan, supra.* The compensatory fine is payable to petitioner. It may include costs and attorney's fees. See, *Dow Chemical Co., v. Chemical Cling, Inc.,* 434 F.2d 1212, 1215 (5th Cir.1970), *cert. denied,* 402 U.S. 945, 91 S.Ct. 1621, 29 L.Ed.2d 113 (1971). The coercive, non-punitive fine is payable to the Clerk of Court. *In Re Drinnan, supra.* It is also within our power to impose imprisonment of the contemnor until he purges himself of contempt by compliance with the Court Order. *Id.* at 1150. This is a drastic coercive measure reserved for the most extraordinary circumstances and should be used sparingly.

In this case, we find that respondents must reimburse the petitioners for all damages, costs, and attorney's fees occasioned by their contemptuous conduct and the trial of this proceeding. We also believe that this is an instance where other coercive measures are necessary to compel compliance. Accordingly, we find that re-

---

* Specifically, Mr. Chamber's counsel knew that Mr. Chambers had conveyed two tracts of land which formed part of the purchased assets to a trust earlier that morning. (File record at 9, letter from respondent's counsel to the court).

**122**

spondent G. Russell Chambers, the party primarily responsible for this matter, must pay a fine in an amount "reasonably calculated to force compliance without being punitive". *Id.* at 1149. Under *United States Mine Workers, supra,* we must examine several factors in this respect: (1) The "character and magnitude of the harm threatened by continued contumacy"; (2) The "probable effectiveness of any suggested sanction in bringing about [compliance]"; and (3) The "amount of the defendant's financial resources and the consequent seriousness of the burden to that particular defendant". *U.S.* at 304, 67 S.Ct. at 701.

We note that Mr. Chambers has conducted himself in a sly and surreptitious manner on one prior occasion. Here, we are compelled to hold him and his corporation in contempt for another instance of reprehensible conduct. Thus, the fine must be sufficient to cleanse Mr. Chambers of his condescending attitude to ensure future cooperation in the *judicial* resolution of this matter. Further, the fine must be sufficient to bring about compliance with the injunction in question. This proceeding involves an eighteen million dollar contract. It is clear that the Mr. Chambers and his corporation are persons of substantial wealth engaged in numerous business ventures, including the ownership and operation of a television station and various oil and gas properties. We agree with petitioner that "[i]t is time that Mr. Chambers and his company realize they are not above the rules and orders of this Honorable Court". (Petitioner's Mem., p. 5). Therefore, we believe a fine in the amount of $25,000 against G. Russell Chambers, individually, is reasonable in relation to the facts of this case and his financial resources.

## JUDGMENT

Plaintiff's Order to Show Cause having been served on respondents Calcasieu Television & Radio, Inc. and G. Russell Chambers, hearing having been had, for written reasons this day assigned, it is

ORDERED that respondents Calcasieu Television & Radio, Inc. and G. Russell Chambers allow full disclosure of the general ledger and the 1982 income tax return of Calcasieu Television & Radio, Inc. as provided in our order of October 24, 1983 immediately upon request of plaintiff;

FURTHER ORDERED that plaintiff Nasco, Inc. submit to the court on or before March 30, 1984 affidavits outlining their compensatory damages, including attorney's fees, occasioned by this proceeding for our consideration in assessing the amount of compensatory damages;

FURTHER ORDERED that respondents Calcasieu Television & Radio, Inc. and G. Russell Chambers are guilty of contempt of the orders of this Court and as a penalty therefor respondent G. Russell Chambers pay a fine in the amount of TWENTY–FIVE THOUSAND AND NO/100 ($25,-000.00) DOLLARS to Robert Shemwell, Clerk of Court, Western District of Louisiana, on or before March 28, 1984.