**CHASE INDUSTRIES, INC., DURUS DIVISION, Plaintiff,**

v.

**FROMMELT INDUSTRIES, INC., Defendant.**

No. C87–1024.

United States District Court, N.D. Iowa, E.D.

Oct. 2, 1992.

James C. Nemmers, Constance M. Alt, Cedar Rapids, Iowa, Guy W. Chambers, Townsend and Townsend, San Francisco, Cal., for plaintiff.

Leo A. McCarthy, Reynolds & Kenline, Dubuque, Iowa, Paul L. Brown, Emrich & Dithmar, Chicago, Ill., for defendant.

## ORDER

HANSEN, Circuit Judge, Sitting by Designation.

This matter is before the court on this court's order of July 5, 1991, directing defendant to appear before the court to show cause why it should not be held in contempt. The court held a hearing in this matter on September 17, 1991, and a supplemental hearing on November 1, 1991. Appearing for plaintiff were James C. Nemmers, Esq. (at the September 17, 1991 hearing), Constance M. Alt, Esq. (at the November 1, 1991 hearing), and Guy W. Chambers, Esq. Appearing for defendant were Leo A. McCarthy, Esq., and Paul L. Brown, Esq. Testimony was taken, evidence was received, and the arguments of the parties were made and heard. The decision in this case has been delayed because of this judge's appointment to the Eighth Circuit Court of Appeals. For the past ten months, I have tried to carry water on both shoulders, acting both as a district judge to decide and determine the cases I had tried, and as a circuit judge with a full circuit case load. In doing so, priorities had to be established among the various criminal and civil trial and appellate cases for which I had responsibility. The court, having now had the opportunity to review the testimony and evidence and to consider the arguments of the parties, makes the following Findings of Fact, determines Conclusions of Law, and enters the following Order.

## FINDINGS OF FACT

1. Plaintiff originally filed a complaint for patent infringement against defendant on August 17, 1984. *See Durus Indus., Inc. v. Frommelt Indus., Inc.*, No. C84–1031 (N.D.Iowa). That action was settled in December 1986 by a settlement agreement entered into between the parties. *See* defendant's exhibit A. On May 14, 1987, plaintiff brought this action for breach of that settlement agreement. On July 7, 1987, this court entered a preliminary injunction against defendant. *See* defendant's exhibit B. Following entry of the preliminary injunction, the parties entered into a settlement agreement. *See* defendant's exhibit D. That settlement agreement provided for the entry of the consent judgment and permanent injunction by the court, which was entered on October 16, 1987. *See* defendant's exhibit C ("consent judgment").

2. The consent judgment provides:

Defendant Frommelt and its officers, directors, successors, assigns, affiliates, agents, servants, employees and all persons or entities in active concert or participation with Frommelt who receive notice of this Consent Judgment are perma-

nently enjoined and restrained from manufacturing, using, distributing, licensing, selling or marketing the Frommelt Series 7000, Model 7720 impact resistance door, or any other impact resistance door featuring a rotationally molded top edge, or any Frommelt Series 7000 door which is not manufactured substantially as shown in Exhibit "A" to the Settlement Agreement entered into by Durus and Frommelt in December, 1986.

Consent judgment, entered October 16, 1987, at para. 3.

3. The second settlement agreement provides:

FROMMELT agrees that it will not manufacture, distribute, license, offer to sell, sell or otherwise market any Series 7000 impact resistance door having a rotationally molded top edge or which is not manufactured substantially as shown in Exhibit "A" to the December, 1986 settlement agreement.

Settlement agreement, defendant's exhibit D, at para. 1.

4. Following the issuance of the preliminary injunction of July 7, 1987, Paul J. Frommelt, Chief Executive Officer of Frommelt Industries (Frommelt), instructed David Frommelt, product manager of the door division, to implement the injunction. On July 17, 1987, prior to the issuance of the consent judgment, David Frommelt sent an engineering change notice (ECN) to the manufacturing, marketing, and sales departments. *See* defendant's exhibit E. That ECN stated that, with respect to all 7000 series, 7700 model doors, manufacturing should "cut tops off all 7000 panels and cap." *Id.*

5. Thomas L. Jansen was the production foreman at Frommelt responsible for implementing the ECN. At the September 17, 1991 hearing, Mr. Jansen, using models, *see* defendant's exhibits I through M, demonstrated the process of making the doors at issue. Frommelt receives panels from its supplier in two sizes, 4 by 8 feet and 3 by 7 feet. The panels, when received, have rotationally molded, closed, rounded edges on all four sides. The rotational molding on the jamb side of the door is completely

cut off by Frommelt, and the hinge stile is attached. Hardware caps are installed on the top and bottom. The rotational molding on the bottom is also completely cut off. The door is then "squared" to the appropriate size by cutting off a portion of the top. A top cap is then pop riveted on to cover the top edge. For a 3- by 7-foot panel, as much as a $\frac{3}{8}$ inch section is cut off from the top of the door. For a 4- by 8-foot panel, a $\frac{5}{8}$ inch section is normally cut off.

6. With regard to the 3- by 7-foot doors, because only enough of the top of the door is cut off to square the door, some have all of the rotational molding on the top of the door cut off, and others have little cut off. Still other doors have part of the rotational molding cut off in varying degrees. *Compare* defendant's exhibit P *with* plaintiff's exhibit 2 (November 1, 1991 hearing).

7. With regard to the 4- by 8-foot doors, all of the rotational molding on the top of the door is cut off. Plaintiff has withdrawn its claim that the 4- by 8-foot doors violate the consent judgment.

8. Prior to August of 1991, Mr. Jansen had not seen a copy of the consent judgment. Mr. Jansen was never explicitly instructed to cut the top of each door so that no rotational molding was left on the top. There is no evidence that Frommelt's upper management took any steps to determine what procedure Mr. Jansen was following in response to the ECN, or to the injunction, or if the product which went out the door met the terms of the injunction.

9. At the National Plant Engineering and Maintenance Show (NPEM Show) in Chicago in April 1991, Frommelt demonstrated a Series 7000 door which had a complete uncut rotationally molded top edge and no top cap. *See* exhibit 7 to plaintiff's memorandum, filed July 5, 1991. That door was manufactured prior to the issuance of the consent judgment. In fact, it was the very door whose showing at the Promat 87 trade show generated the underlying 1987 injunction proceedings. A few days before the 1991 NPEM Show, Mr. Jansen was informed by his supervisor,

James Risley, that a display Series 7000 door was needed. Mr. Jansen examined the door which they had used at the most recent trade shows and found it to be scratched and unusable. He then searched through the boxes in the storeroom, found the Promat 1987 door, placed it in the display pedestal, and the door was then actually shown at the NPEM Show. No Frommelt employee gave any explicit consideration to whether that door complied with or violated the consent judgment. However, supervisor Risley did direct that bumpers be added to the door for the show, so it is clear that someone in management observed the door closely before it was sent to be displayed in Chicago. Paul J. Frommelt, president of the firm's safety division, was present at the company's display booth, noticed the door displayed but claims to have not noticed that it had no top cap.

10. Following the showing of the offending Frommelt door at the NPEM Show, plaintiff had a "reminder copy" of the consent judgment served on the defendant, and then arranged to purchase a Frommelt door. *See* plaintiff's exhibit 2 (November 1, 1991 hearing) (top portion of door). That door, purchased after the "reminder copy" was served, has rotational molding covering approximately 90 percent of the top edge.

11. Defendant did not contact plaintiff to determine if the manufacturing procedure implemented by the ECN and followed by defendant complied with plaintiff's interpretation of the consent judgment. Defendant did not petition the court for a ruling on whether defendant's procedure complied with the consent judgment.

12. The settlement agreement entered into by the parties in the fall of 1987 provides in part:

DURUS and FROMMELT agree that the amount of any damages sustained by DURUS as a result of any manufacture, distribution, license, offer for sale or sale of any FROMMELT door which violates this Settlement Agreement will be difficult, if not impossible to ascertain. As a good faith estimate of such damages, if they occur, DURUS and FROMMELT agree to set as liquidated damages the sum of two thousand five hundred dollars ($2500) per door for any FROMMELT door found to be manufactured, distributed, licensed, offered for sale or sold in violation of this Settlement Agreement. This stipulation of damages will not preclude the District Court from assessing any other penalties or granting any further relief which it deems appropriate.

Settlement agreement, defendant's exhibit D, at para. 7.

13. Plaintiff has submitted a list of 274 3- by 7-foot doors sold by Frommelt from October 16, 1987, to June 7, 1991, and seeks liquidated damages of $2,500 for each such door, totaling $685,000. *See* exhibit A to declaration of Guy W. Chambers concerning damages, filed October 31, 1991. Evidence regarding some specific doors on that list was introduced.

a. Invoice number 8822253 (two doors sold to Metro Dock Specialists), invoice number 8880341 (twelve doors sold to Madigan Construction), and invoice number 9080785 (six doors sold to Kimmel Construction) involved doors cut from 4- by 8-foot panels in order to have the larger vision panel. *See* defendant's exhibits T, U, V. These doors do not have rotational molding on the top edge.

b. David Frommelt inspected 8 panels out of 21 installed at Texas A & M University, invoice numbers 8720999 and 8820301. *See* defendant's exhibit W. Of the panels he inspected, he reported that all were cut full width and had a full width top cap. *Id.* David Frommelt took several photographs of some of those doors. *See* defendant's exhibits AA through QQ. At the November 1, 1991 hearing, he testified that two of the doors had 1/32 inch of rotational molding remaining, one over 70 percent of the door and the other over 50 percent.

c. Defendant's exhibits X, Y, and Z show pictures of a door installed at Micro Dynamics. There is no evidence as to the related invoice number. Those photographs show rotational molding on approximately 5 percent of the top of the door.

d. Invoice number 8980070 shows two 3– by 7–foot doors sold to Felesena Commercial Builders. *See* defendant's exhibit N. Those doors were fully cut so that no rotational molding remained. *See* defendant's exhibit P.

e. With regard to the remaining doors, there is no specific evidence as to whether those doors have rotational molding on the top edge.

## CONCLUSIONS OF LAW

1. The court has personal jurisdiction over the parties and subject matter jurisdiction over this case. "This court will retain jurisdiction over this action and the parties for the purpose of enforcing this Consent Judgment and making any further orders which may become necessary to effectuate this Consent Judgment." Consent judgment, filed October 16, 1987, at para. 5.

2. "Civil contempt is a remedial sanction used to obtain compliance with a court order or to compensate complainant for damage incurred as a result of non-compliance." *United States v. Abodeely*, 564 F.Supp. 327, 329 (N.D.Iowa 1983) (citing cases). "A person is liable for civil contempt if he violates a court order with actual notice that the order has been issued; it is not necessary that the violation be willful or that there was intent to violate the order." *Id.*

3. Plaintiff, as complainant, bears the burden of establishing contempt by clear and convincing evidence. *NLRB v. Construction & Gen. Laborers' Union Local 1140*, 577 F.2d 16, 19 (8th Cir.1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979); *NLRB v. Ralph Printing and Lithographing Co.*, 433 F.2d 1058, 1062 (8th Cir.1970), *cert. denied*, 401 U.S. 925, 91 S.Ct. 883, 27 L.Ed.2d 829 (1971). Once that burden is met, defendant bears the burden of producing evidence of any inability to comply with the injunction. *See United States v. Roberts*, 858 F.2d 698, 700–01 (11th Cir.1988). *See also United States v. Rue*, 819 F.2d 1488, 1494–95 (8th Cir.1987) ("In a civil contempt proceeding, the defendant may assert a *present* inability to comply with the earlier enforcement

order. In raising this defense, however, the defendant bears the burden of production. The defendant does not meet this burden simply by alleging nonpossession of the summoned documents."). If the language of the consent judgment is too vague, it should not be enforced. *Vertex Distrib. v. Falcon Foam Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir.1982) (citing cases). If a defendant's actions are based on a good faith and reasonable interpretation of the consent judgment, he should not be held in contempt. *Id.*

4. Contrary to defendant's assertion, the issue before the court is not whether defendant's doors infringe upon plaintiff's patent. The issue is whether defendant has violated the October 16, 1987 consent judgment.

5. "The burden of avoiding infringement at the risk of contempt falls upon the one enjoined." *Smith Int'l, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 n. 8 (Fed.Cir.1983), *cert. denied*, 464 U.S. 996, 104 S.Ct. 493, 78 L.Ed.2d 687 (1983). "A party's compliance with a court order cannot be avoided by 'a literal or hypertechnical reading of an order,' for it is 'the spirit and purpose of the injunction, not merely its precise words, that must be obeyed.'" *Nasco, Inc. v. Calcasieu Television & Radio, Inc.*, 583 F.Supp. 115, 120 (W.D.La. 1984) (quoting *National Research Bureau, Inc. v. Kucker*, 481 F.Supp. 612, 615 (S.D.N.Y.1979)). Defendant had an affirmative duty to petition the court for clarification of any ambiguous areas of the injunction. *Nasco*, 583 F.Supp. at 120 (citing cases).

6. With regard to the showing of the infringing door at the April 1991 NPEM show, defendant argues that the showing of that door was inadvertent. While that may be the case, intent is not relevant. *See Abodeely*, 564 F.Supp. at 329 ("[I]t is not necessary that the violation be willful or that there was intent to violate the order."). Defendant further argues that the showing of the infringing door was not a "use" or "marketing" of the door that is prohibited by the permanent

injunction. This court disagrees. Demonstration of a product at a trade show is certainly within the common meaning of "using" and "marketing." The court does not find, as defendant suggests, that a sale need occur before the consent judgment is violated. The court finds that the showing of the door at the NPEM trade show was a violation of the consent judgment, occasioned by a rather heedless and reckless disregard of Frommelt's senior management to determine whether or not they were in continuing compliance with the injunction.

■ 7. Defendant argues that the word "featuring" in the consent judgment should be interpreted as prohibiting only the manufacturing, using, distributing, licensing, selling, or marketing of a door in which a rotationally molded top edge is visible or is advertised. Defendant argues that since the rotationally molded top edge is covered by the top cap, the edge is not visible and thus the door does not "feature" a rotationally molded top edge. Defendant further argues that it does not advertise the rotationally molded top edge. Plaintiff argues that "featuring" should be interpreted as having or containing.

The common definition of "feature" is as follows:

1a: the makeup, structure, form, or outward appearance of a person or thing ... c: something that goes to make up something else: element, part, constituent ... 2a: the makeup or cast of the face or its parts: facial aspect or appearance ... 4a: a marked element of something: something that is esp. prominent ... b: something offered to the public or to a clientele that is exhibited or advertised as particularly attractive ...

*Webster's Third New International Dictionary* 832 (1981). Both plaintiff's and defendant's interpretations of "feature" are encompassed within this definition. As the word "feature" is capable of both meanings argued, the court must look to the other sources known to and used by the parties in this case to ascertain its intended meaning.

8. This court's July 7, 1987 preliminary injunction found in part:

Exhibit "A" attached to the settlement agreement clearly shows a top door cap across the full width of the door as a component of the Series 7000 door manufactured by Frommelt. Exhibit "A" further shows that the *top cap covers a cut edge and that the front and back panels of the door are not molded together.*
....

This Model 7770 door differs substantially from the door depicted in Exhibit "A" of the settlement agreement in that *the top edge is rotationally molded so as to make the front and back panels of the door of one piece, instead of featuring a top cap as is shown in Exhibit "A".*

Preliminary injunction, entered July 7, 1987, at 3 (findings of fact) (emphasis added). The second settlement agreement entered into by the parties covers "any Series 7000 impact resistance door *having* a rotationally molded top edge." Defendant's exhibit D at para. 1 (emphasis added).

The consent judgment covers "any other impact resistance door featuring a rotationally molded top edge, *or any Frommelt Series 7000 door which is not manufactured substantially as shown in Exhibit "A" to the Settlement Agreement entered into by Durus and Frommelt in December, 1986."* Defendant's exhibit C (emphasis added). This language of the consent judgment and decree is drawn from the preliminary injunction. *Compare* consent judgment at 2, para. 3 *with* preliminary injunction, at 6, para. 1. The consent judgment contains no language suggesting that this court's finding of July 7, 1987, that Exhibit "A" shows a door where the front and back panels are not connected by a rotationally molded top edge, is incorrect. The consent judgment makes no changes in Exhibit "A." In the contemporaneous settlement agreement, Frommelt agreed to not make, use, or sell doors *having* a rotationally molded top edge. The court finds that plaintiff's interpretation of the consent judgment is correct, reasonable, and totally consistent with the history of this case, while defendant's contention is an unreasonable contortion which emasculates the

spirit and principal purpose of the injunction. Defendant's practice of leaving a portion of the rotational molding on the top edge of some of the doors violates the consent judgment and permanent injunction.

9. Defendant has not shown that it was unable to comply with the consent judgment by cutting all of the rotational molding from the top edge of each door. Defendant's evidence failed to show why the first side to side cut could not have been done at the top edge of the door to insure no rotationally molded top edge remained, and any further cutting needed to square the door done at the bottom edge instead of vice versa.

10. Plaintiff has withdrawn its complaint that the 4– by 8–foot doors are violative of the injunction. The court finds that there is no evidence that any 4– by 8–foot door manufactured by defendant violates the consent judgment.

■ 11. Plaintiff has proven by clear and convincing evidence that 5 of the 3– by 7–foot doors have at least part of the rotational molding on the top edge. *See* plaintiff's exhibit 2 (randomly purchased door); two Texas A & M doors; defendant's exhibits X, Y, and Z (two doors at Micro Dynamics). The court finds that these doors violate the consent judgment. As previously found, the showing of the door at the NPEM show also violated the consent judgment. Through the testimony of Thomas Jansen, plaintiff has proven by clear and convincing evidence that other 3– by 7–foot doors manufactured by defendant have left the factory with a partial rotationally molded top edge still intact. However, plaintiff has not proven the exact number of such doors by clear and convincing evidence.

■ 12. The fashioning of an appropriate remedy for civil contempt is within the court's broad discretion. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193– 94, 69 S.Ct. 497, 500–01, 93 L.Ed. 599 (1949). As part of a civil contempt remedial order, the court may order the contemnor to reimburse the injured party for losses sustained and for reasonable attorney's

fees. *Abodeely*, 564 F.Supp. at 329 (citing cases). However, the remedy and sanctions chosen must be remedial and compensatory and, unlike a criminal contempt, nonpunitive. *United States v. United Mine Workers*, 330 U.S. 258, 302, 303–04, 67 S.Ct. 677, 700–01, 91 L.Ed. 884 (1947). "Generally, a compensatory sanction 'may not exceed the actual loss to the complainant caused by the actions of respondent, lest the contempt fine become punitive in nature, which is not appropriate in a civil contempt proceeding.'" *In re Tetracycline Cases*, 927 F.2d 411, 413 (8th Cir. 1991) (quoting *NLRB v. Laborers' Int'l Union*, 882 F.2d 949, 955 (5th Cir.1989)).

■ 13. Defendant does not argue that the agreed upon liquidated damages of $2,500 per door are punitive rather than compensatory. Accordingly, the court will award $2,500 for each of the six specifically proven violating doors, for a total of $15,000.

■ 14. However, the court does not find that this sum is adequate to compensate plaintiff for its reasonable losses sustained due to defendant's violation of the terms of the consent judgment. The court finds that an additional $75,000 should be awarded to plaintiff to adequately reflect the injury to plaintiff resulting from those doors. "When awarded as a means of compensation, however, a civil contempt fine is not always dependent on a demonstration of 'actual pecuniary loss.'" *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir.1989) (citing *Leman v. Krentler–Arnold Hinge Last Co.*, 284 U.S. 448, 455–56, 52 S.Ct. 238, 241, 76 L.Ed. 389 (1932)), *cert. denied*, 494 U.S. 1029, 110 S.Ct. 1477, 108 L.Ed.2d 614 (1990). When received by Frommelt, all of the 3– by 7– foot panels are rotationally molded on all edges. On all doors, at least a portion of the molding has been cut off to square the door. On the sample door specifically prepared by Mr. Jansen for use in this matter, rotational molding was left on approximately 40 percent of the top of the door. *See* defendant's exhibit I. Approximately 90 percent of the rotational molding was

left on the top of the door purchased by plaintiff at random. *See* plaintiff's exhibit 2 (November 1, 1991). It is clear that the amount of rotational molding left on each door manufactured by defendant varies. On some doors, no rotational molding is left. On others, the door looks like defendant's exhibit I, or like plaintiff's exhibit 2 (November 1, 1991). Thus, it is clear that some doors manufactured and sold by Frommelt, in addition to those specifically proven to have rotational molding on the top edge, contain some rotational molding on the top edge.

■ Plaintiff has not proven the exact number of doors containing rotational molding. Nor is there evidence, such as a random sample, from which the actual number could be derived. However, the court recognizes that the doors are now in the possession of defendant's customers and that those customers are reluctant to permit their doors to be disassembled for inspection. The court also notes that plaintiff was unsuccessful in devising a joint inspection program with defendant. *See* declaration of plaintiff's counsel, filed October 31, 1991, at 6–7. The court also notes that the liquidated damages clause in the second settlement agreement does not prevent the court from granting any relief which the court deems appropriate. *See* defendant's exhibit D at para. 7. However, this court has carefully weighed the evidence concerning the defendant's efforts at implementing the injunction and the known evidence of the doors sold and their condition, including the manufacturing procedures used and finds there is sufficient evidence from which the court can reasonably fix a civil contempt remedy. The court must substantially discount the plaintiff's damage calculation in order to reflect the lack of proof of the actual number of doors which violate the consent judgment and to insure that the award of damages is compensatory and not punitive.

■ 15. Plaintiff requests an award of attorneys' fees in the amount of $72,063 for work done prior to October 22, 1991, and an estimated $7,850 for work done in connection with the November 1, 1991 hear-

ing; and an award of $8,258 for costs incurred prior to the November 1, 1991 hearing and $1,388 for estimated costs in connection with the November 1, 1991 hearing. Defendant argues that attorneys' fees may be awarded only where the violation of the court order is shown to be willful. *See Manhattan Indus.*, 885 F.2d at 8. However, the rule in the Eighth Circuit differs.

A remedial award of attorney's fees and costs is committed to the sound discretion of the district court. Reimbursement may include expenses reasonably incurred in the prosecution of the contempt proceedings. Although willfulness is not necessarily a prerequisite to an award of fees, it may properly be considered in deciding whether to tax costs and attorney's fees in an action to enforce compliance with an injunction.

*Hartman v. Lyng*, 884 F.2d 1103, 1107 (8th Cir.1989) (citations omitted).

There is some circumstantial evidence of willfulness in the evidentiary record. Defendant's strained interpretation of "featuring" is an example, particularly in light of the language used in the settlement agreement. However, that evidence is not conclusive. As noted by plaintiff, this is the third time that plaintiff has had to come to the court to redress its grievances. Plaintiff has prevailed all three times. Further, as discussed above, this court's July 7, 1987 preliminary injunction clearly stated that Exhibit "A" showed a door with separate front and back panels and with no rotational molding on the top edge. The second settlement agreement clearly prohibits doors having a rotationally molded top edge. Frommelt's upper management did take some steps to implement the injunction by instructing Mr. Jansen to "cut tops off all 7000 panels and cap." *See* defendant's exhibit E. However, Mr. Jansen, who was not shown copies of the preliminary injunction or the consent judgment, misinterpreted those instructions. Upper management failed to undertake the necessary inspection and supervision to insure that the production workers were complying with the consent judgment. There is no direct evidence that defendant

intentionally determined to not comply with the consent judgment. The court finds that defendant's non-compliance with the terms of the consent judgment was not willful. However, the court finds that defendant acted with heedless and reckless disregard as to whether it was complying with the terms of the consent judgment. Given the state of the evidence, the court finds that attorneys' fees and costs should be awarded.

 16. The court also finds that the descriptive detail of plaintiff's accounting for attorneys' fees and costs is lacking. *See* declaration of plaintiff's counsel, filed October 31, 1991, and exhibit C to that declaration. Plaintiff does not specifically delineate the number of hours spent on this matter by each of the three counsel. *See* Local Rule 22. Plaintiff does not specifically describe the nature of the costs incurred. The court is unable to determine whether the claimed costs are allowable under 28 U.S.C. § 1920. Accordingly, the court will allow plaintiff's counsel to submit a more detailed accounting of the attorneys' fees and costs the plaintiff seeks. *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir.1991) (suggesting the more appropriate approach is to give opportunity to cure rather than to discount).

### ORDER:

Accordingly, It Is Ordered:

1. Plaintiff's motion for leave to file overlength reply brief, filed September 13, 1991, is granted.

2. It is hereby adjudged, decreed, and declared that defendant is in contempt of the consent judgment and permanent injunction entered by this court on October 16, 1987.

3. As a result of that contempt, judgment is awarded in favor of plaintiff and against defendant in the amount of $90,000 as a civil contempt fine, together with a separate entitlement to reasonable attorneys' fees, and for costs. Counsel for plaintiff, pursuant to Local Rule 22, may within thirty days submit additional detail concerning plaintiff's claim for attorneys'

fees and costs for which a supplemental judgment will be entered.

4. The clerk of court is directed to enter judgment accordingly.

Done and Ordered this 30th day of September, 1992.