**Simeon CHARLES, Appellant,**

v.

**Benita CHARLES, Appellee.**

**No. 84–1576.**

District of Columbia Court of Appeals.

Submitted Oct. 21, 1985.

Decided Feb. 27, 1986.

---

Mercer Gordon Anderson, Washington, D.C., for appellant.

Stephen M. Salinger, Washington, D.C., for appellee.

Before NEWMAN, FERREN and TERRY, Associate Judges.

FERREN, Associate Judge:

Court-appointed defense counsel in this divorce action contends that, absent an applicable statute or court rule, the trial court erred in assessing attorney's fees against him personally for failure to comply with court orders to respond to plaintiff's complaint. Based on *Roadway Express, Inc. v.*

*Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), we conclude the trial court had inherent power to impose this sanction, provided the court found counsel had acted in bad faith. Because the court did not make such a finding, we reverse and remand for further proceedings.

## I.

In order to evaluate counsel's contention, we must address the proceedings chronologically. On January 12, 1984, the trial court appointed attorney Mercer Anderson to represent Simeon Charles, a defendant in a divorce proceeding who apparently was absent from the jurisdiction. *See* D.C.Code § 16–918(a) (1981) (appointment of counsel). The court also ordered Anderson to file an answer within 30 days. He did not do so.

On May 25, 1984, the court considered plaintiff Benita Charles' motion to compel and defendant's motion to extend time. The court ordered the case extended for 30 days and further ordered counsel for defendant to "file an answer or Affidavit in Lieu of answer within fifteen (15) days." He did not do so.

On June 27, 1984, the court granted a defense motion to extend time to comply with the May 25 order. The court also ordered counsel for defendant to "file his Answer or Affidavit in lieu of Answer on or before July 30, 1984." Again, counsel failed to do so.

On August 31, 1984, plaintiff filed a motion asking the court to: (1) hold counsel for defendant in contempt of court, (2) require counsel for defendant to pay attorney's fees incurred by plaintiff in her attempt to obtain compliance with the court's orders of January 12, May 25, and June 27, 1984, and (3) enter a default judgment of divorce against defendant.

Counsel for defendant did not respond to plaintiff's motion within ten days or seek an extension of time within which to respond. Super.Ct.Dom.Rel.R. 7(b)(1)(i), (v). On September 28, 1984, over seven months after counsel had first been ordered to file

a responsive pleading, the court scheduled a hearing for October 15.

On October 10, 1984, counsel for defendant personally served on counsel for plaintiff an affidavit in lieu of answer, stating that defense counsel had tried to reach defendant at his last known address and then, after a "tracing inquiry," had attempted to find defendant at "two different addresses in Houston, Texas." Counsel further averred that he had "no knowledge of the present whereabouts of Defendant, despite diligent search efforts."[1]

On October 15 after a hearing, plaintiff's counsel—with the court's agreement—withdrew his motion to hold defense counsel in contempt. But he continued to seek attorney's fees from defense counsel, as well as a default judgment of divorce. The court granted plaintiff's remaining motions, ordering that "Counsel for Defendant shall pay two hundred and ninety four dollars ($294.00) to Plaintiff's Attorney to compensate for legal services rendered in obtaining Counsel for Defendant's Compliance with the January 12, 1984, May 25, 1984 and June 27, 1984 orders." The court also ordered that "Defendant herein is in default." Inadvertently, however, the court apparently signed, in its entirety, the draft order submitted by plaintiff's counsel before the hearing. In doing so, the court also ordered that "Counsel for Defendant shall be held in contempt of this Court."

## II.

Counsel, in defendant's name,[2] appeals on the ground of "abuse of discretion in assessing attorney's fees and insufficiency of evidence respecting a finding of contempt."

### A.

Counsel for plaintiff acknowledges that, at the October 15 hearing, he told the trial court the motion for contempt was moot, given defense counsel's eventual though belated service of the affidavit in lieu of answer on Ocober 10.

THE COURT: So I take it what you're asking for in lieu of a finding of contempt is for attorney's fees to cover the amount of time expended by you on your client's behalf—

MR. SALINGER: That is correct.

THE COURT: —in your opinion, as a result of Mr. Anderson's failure to act responsively and responsibly.

MR. SALINGER: That is correct. The motion for contempt as far as the filing of the affidavit is moot. He has now filed again. Last Thursday I received the affidavit in lieu of answer.

THE COURT: You were seeking 4.9 hours at how much?

MR. SALINGER: At $60 per hour.

THE COURT: That's $294.

MR. SALINGER: Correct.

THE COURT: The motion for contempt is withdrawn.

MR. ANDERSON: May I be heard?

THE COURT: No. You have been heard. The motion for contempt is withdrawn with the Court's consent. The motion for attorney's fees is granted, $294, to be paid by Mr. Mercer [Anderson].

MR. SALINGER: Thank you, your Honor.

THE COURT: Supply an Order if one is not in the jacket, Mr. Salinger.

MR. SALINGER: I believe there is one in the jacket.

---

1. There are two unidentified file stamps on the affidavit of record—one dated October 10, 1984 and the other dated October 15, 1984. In contrast with the other file stamps on the pleadings of record, neither stamp shows that the affidavit was filed with the clerk of the Family Division of the Superior Court. That court's jacket entry indicates the affidavit was filed in court on October 15, 1984.

2. We do not pause to determine whether counsel has styled his appeal in a permissible manner. We do note that this court has entertained a similar appeal filed by counsel in his own name. *Brady v. Fireman's Fund Insurance Companies*, 484 A.2d 566 (D.C.1984).

After the October 15 hearing, the court apparently signed the draft order which plaintiff's counsel had supplied before withdrawing (with the court's concurrence) the motion for contempt. The portion of that order holding counsel for defendant in contempt of court must therefore be deleted.

In view of counsel's and the court's resolution of the contempt issue, we need not consider the applicability of D.C.Code § 15-320(b) (1981) (use of contempt power to enforce decrees against a defendant) as a vehicle for assessing the costs of plaintiff's attorney's fees against an attorney for the defendant.[3] We have to look elsewhere.

**B.**

■ Contrary to plaintiff-appellee's contention, D.C.Code § 16-911(a)(1) (1981) does not apply. This statute authorizes the trial court to "require the husband or wife to pay … suit money, including counsel fees, to enable such other spouse to conduct the case." It does not authorize the court to require an attorney for a party, in some circumstances, to pay counsel fees personally.

Nor is there an applicable Superior Court rule. *Compare* Super.Ct.Civ.R. 37(a)(4), 37(b)(2), and 37(d) (authorizing court, in compelling discovery, to require the recalcitrant party and/or the advising attorney to pay reasonable expenses, including attorney's fees, incurred by moving party); *Brady v. Fireman's Fund Insurance Companies*, 484 A.2d 566 (D.C.1984) (upholding denial of motion for relief from order holding client and attorney jointly and severally liable for attorney's fees as sanction for failure to comply with discovery order).

■ We therefore must consider whether the trial court, nonetheless, had inherent authority to assess plaintiff's attorney's

fees against counsel for defendant based on his repeated failure to obey court orders to file an answer or affidavit in lieu thereof.

According to the Supreme Court, "[t]he inherent powers of federal courts are those which 'are necessary to the exercise of all others.'" *Piper*, 447 U.S. at 764, 100 S.Ct. at 2463 (citation omitted). An inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962) (footnote omitted). Although the "most prominent of these is the contempt sanction," *Piper*, 447 U.S. at 764, 100 S.Ct. at 2463, the court's inherent powers extend—absent a statute or rule—to a variety of sanctions necessary to respond "to abusive litigation practices," *id.* at 765, 100 S.Ct. at 2463, including even the power to dismiss *sua sponte* a complaint, with prejudice, for failure to prosecute. *Link*, 370 U.S. at 629-30, 82 S.Ct. at 1388.

"Because inherent powers are shielded from direct democratic controls," *Piper*, 447 U.S. at 764, 100 S.Ct. at 2463, and because liberty and/or property interests may be affected by their exercise, a court not only must use sound discretion and restraint in relying on inherent powers, *id.*, but also must assure due process—fair notice and an opportunity to be heard on the record—before imposing a sanction based on those powers. *Id.* at 767, 100 S.Ct. at 2464; *Brady*, 484 A.2d at 568-69.

With these considerations in mind, the Supreme Court concluded in *Piper* that "[t]here are ample grounds for recognizing … that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." 447

---

**3.** Counsel for plaintiff has not sought to justify his request for attorney's fees on the ground that the court's civil contempt power can be exercised for remedial, as well as coercive, purposes. *See McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599

(1949); *United States v. United Mine Workers of America,* 330 U.S. 258, 303-04, 67 S.Ct. 677, 701, 91 L.Ed. 884 (1947); *Bolden v. Bolden,* 376 A.2d 430, 432-33 (D.C.1977); Dobbs, *Contempt of Court: A Survey,* 56 Cornell L.Rev. 183, 275-78 (1971).

U.S. at 765, 100 S.Ct. at 2463. More specifically, in *Piper*, the district court had dismissed a complaint with prejudice and, citing several federal statutes, had assessed the defendant's costs and attorneys' fees against plaintiff's counsel personally for their "deliberate inaction" in failing to comply with discovery orders. The Supreme Court rejected the district court's statutory bases for awarding fees. The Court noted, however, that Fed.R.Civ.P. 37 (which the district judge had not considered) did authorize such a sanction. Furthermore, the Court concluded that the district judge could have relied, alternatively or additionally, on the court's inherent power to assess the defendant's attorneys' fees against the plaintiff's attorneys personally, if the judge found that plaintiff's counsel had acted in bad faith. The court accordingly remanded the case for reconsideration under both Rule 37 and the trial court's inherent authority.

The Supreme Court premised its inherent powers analysis primarily on its reasoning in *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), where the Court had recognized several exceptions to "the general rule in federal courts ... that a litigant cannot recover his [or her] counsel fees." *Piper*, 447 U.S. at 765, 100 S.Ct. at 2463. *Alyeska* had acknowledged a court's inherent power to allow recovery of fees from a losing party who "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons....'" *Piper*, 447 U.S. at 766, 100 S.Ct. at 2464 (citations omitted). The Court therefore concluded in *Piper*, by analogy, that this bad-faith exception also permitted assessment of counsel fees against the losing party's attorney as well:

> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax coun-

sel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. See Renfrew, Discovery Sanctions: A Judicial Perspective, 67 Calif.L.Rev. 264, 268 (1979). Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such sanctions are within a court's powers.

447 U.S. at 766–67, 100 S.Ct. at 2464 (citations and footnotes omitted).

By addressing both Rule 37 and a trial court's inherent powers, the Supreme Court implicitly recognized that, although the Federal Rules of Civil Procedure incorporate a variety of sanctions that reflect a court's inherent power to curb abuses of the discovery process, those rules are not the source of that power and, therefore, are not preclusive. They "were not intended to circumscribe this essential power." Renfrew, *Discovery Sanctions: A Judicial Perspective*, 67 Calif.L.Rev. 264, 269 (1979) (footnote omitted).

It is important to underscore, however, that in announcing the trial court's inherent power to assess a party's attorney's fees against an opposing counsel personally—absent a statute or rule expressly notifying counsel of that potential sanction—the Supreme Court required the trial court (1) to "make a specific finding as to whether counsel's conduct ... constituted or was tantamount to bad faith," after (2) "fair notice and an opportunity for a hearing on the record." *Piper*, 447 U.S. at 767, 100 S.Ct. at 2464. The Court noted, but expressly avoided addressing, a line of cases from New York assessing attorney's fees, costs, or a penalty against opposing counsel personally based on "mere negligence." 447 U.S. at 767 n. 13, 100 S.Ct. at 2464 n. 13.[4] Accordingly, the Court was concerned

---

**4.** The cases to which the Court referred either imposed financial sanctions against plaintiff's counsel in lieu of dismissing the complaint for failure to prosecute or suggested this as a pref-

erable alternative to dismissal. *See Schwarz v. United States*, 384 F.2d 833, 836 (2d Cir.1967) ("inexcusable neglect"); *Kahn v. Stamp*, 52 A.D.2d 748, 749, 382 N.Y.S.2d 199, 201 (1976)

that the trial court not impose sanctions, under its inherent powers, without finding bad faith, which any officer of the court should know might lead to disciplinary, including financial, sanctions.[5]

## III.

We are persuaded by *Piper* and accordingly adopt the federal approach for the District of Columbia. We conclude that the trial court has inherent authority to assess a plaintiff's attorney's fees personally against counsel for defendant, despite the absence of a statute or court rule expressly providing for that sanction, when defense counsel repeatedly has ignored court orders to answer the complaint. Such a sanction is especially appropriate in the context here. Because defendant was never located, the only party at fault for the delays in responding to court orders was his appointed counsel; thus, sanctions necessarily must be directed at counsel. We further conclude, however, that the trial court abused its discretion here because it failed to find the defendant's attorney had acted in bad faith before the court exercised its inherent authority to impose sanctions.

In sum, we must reverse and remand the case with an order directing the trial court to delete the portion of its order holding

defense counsel in contempt of court. Furthermore, although defense counsel did have fair notice and a hearing on plaintiff's motion for attorney's fees, *Piper*, 447 U.S. at 767, 100 S.Ct. at 2464; *Brady*, 484 A.2d at 568–69, the trial court did not make a specific finding of bad faith. Accordingly, we must reverse and remand for a new hearing and ruling on the motion for attorney's fees. *Piper*, 447 U.S. at 767–68, 100 S.Ct. at 2465.

*So ordered.*

---

(attorney "inadvertence"); *Moran v. Rynar*, 39 A.D.2d 718, 719, 332 N.Y.S.2d 138, 141 (1972) ("attorney neglect or inadvertent error"). The Court said: "Although the New York courts have sanctioned lawyers for mere negligence, this opinion addresses only bad-faith conduct." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 n. 13, 100 S.Ct. 2455, 2464 n. 13 65 L.Ed.2d 488 (1980). By this statement, we understand the Court to have withheld ruling on the inherent powers of state courts and thus to have limited *Piper* to a rule for the federal courts: a finding of bad faith must "precede any sanction under the court's inherent powers" to assess one party's attorney's fees against counsel for the opposing party. *Id.* at 767, 100 S.Ct. at 2465.

5. The Supreme Court's bad faith requirement, derived from the exception in *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), is nonetheless perplexing. Had the trial court sought to impose a

financial sanction against defense counsel as a remedy for civil contempt, the court need not have found "wilfulness" or "bad faith"—terms which the Court used interchangeably in *Piper*, 447 U.S. at 766, 100 S.Ct. 2464. For civil contempt, "it matters not with what intent the defendant did the prohibited act." *McComb*, 336 U.S. at 191, 69 S.Ct. at 499 (footnote omitted); *see Bolden*, 376 A.2d at 432; *supra* note 3. Thus, it is not clear why the Court, relying in both situations on "inherent powers," *see Piper*, 447 U.S. at 764, 100 S.Ct. at 2463, would permit a remedial, financial sanction for civil contempt, irrespective of intent, but would not permit an assessment of attorney's fees against opposing counsel, absent a finding of bad faith. Because civil contempt concededly is out of this case now, *see supra* note 3, we decline to delve into the comprehensive case law on that subject—with a history all its own—in an effort to resolve this possible inconsistency.