**UNITED STATES of America, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, et al., Defendants.**

No. 88 CIV. 4486 (DNE).

United States District Court, S.D. New York.

Dec. 12, 1989.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., Edward T. Ferguson, III, Richard Mark, Peter Sprung, Asst. U.S. Attys., Randy M. Mastro, Sp. Asst. U.S. Atty., New York City, of counsel, for U.S.

Anderson, Kill, Olick & Oshinsky, Jordan Stanzler, Tracy Makow, New York City, of counsel, for Daniel Ligurotis.

## MEMORANDUM & ORDER

EDELSTEIN, District Judge:

This order arises out of the implementation of the March 14, 1989 Consent Decree between the plaintiffs United States of America (the "Government") and the defendants International Brotherhood of Teamsters (the "IBT"). The Consent Decree sought to rid the IBT of the hideous influence of organized crime by altering the IBT Constitution to allow meaningful electoral reform and providing for three Court-appointed officers (the "Court Officers") to oversee the electoral scheme and bring charges against IBT members accused of corruption.

On November 22, 1989, the Government presented and this Court signed an Order to Show Cause why a preliminary injunction should not be entered pursuant to this Court's powers under the All Writs Act, 28 U.S.C. § 1651, (1) enjoining a lawsuit filed by a number of Chicago, Illinois area IBT locals on November 17, 1989, *Chauffeurs, Teamsters & Helpers Local 301 et al. v. Holland,* 89 Civ. 8577 before Judge Suzanne B. Conlon of the Northern District of Illinois (the "Chicago suit"), and (2) holding Chicago plaintiff Daniel Ligurotis—a defendant to the original suit by the Government, a signator to the Consent Decree, current member of the IBT General Executive Board, President of IBT Local 705 in Chicago, President of IBT Joint Council no. 25, and International Director and Chairman of the Policy Committee of the 500,000 member Central Conference of Teamsters—in contempt of the permanent in-

junction barring interference with the Court Officers at ¶ E.10 of the Consent Decree.[1]

The Chicago suit alleges in sum that actions by Election Officer Michael Holland—one of the Court Officers and a named defendant in the Chicago suit—have overstepped the bounds of the IBT Constitution. Further, the Chicago suit complains that ¶ F.12(D) of the Consent Decree impermissibly amends the IBT Constitution. The Chicago suit also alleges that the Memorandum and Order of this Court dated October 18, 1989 (the "October 18 Opinion") is an impermissible expansion of the Consent Decree and contravenes the IBT Constitution.[2]

The Order to Show Cause required all parties to the Chicago suit to appear at a hearing on November 27, 1989. On November 27, 1989, Counsel for Daniel Ligurotis appeared before the Court. The other plaintiffs to the Chicago suit defaulted. The Court then gave Ligurotis until December 4, 1989 to respond to the Government's motion.

On November 27, 1989, this Court also issued an injunction pursuant to its power under the All Writs Act enjoining all of the plaintiffs in the Chicago suit from taking any further action in connection with the Chicago lawsuit except filing a notice of voluntary dismissal with prejudice pursuant to Rule 41(a)(1)(i) of the Federal Rules of Civil Procedure or responding to motions made by the defendant in the Chicago suit.

On December 6, 1989, a conference was held on the Government's motion for contempt sanctions against Daniel Ligurotis. This conference resulted in the scheduling of a factual hearing on the motion for sanctions to be held on December 8, 1989. On December 7, 1989, Ligurotis waived his right to be present at the December 8 hearing, and waived his right to contest the facts set forth in the Government's moving papers of November 22, 1989. At the factual hearing held on December 8, 1989, Ligurotis offered no testimony or submissions to counter the evidence offered by the Government, both in testamentary and documentary form.[3] Through counsel, Ligurotis disputed that his conduct was contemptuous and in the alternative argued over the penalty to be imposed.

*Findings of Fact*

The evidence established that Daniel Ligurotis, for all relevant purposes, is an International Vice President and member of the General Executive Board (the "GEB") of the IBT, International Director and Chairman of the Policy Committee of the Central Conference of Teamsters,[4]

1. The complete list of plaintiffs in the Chicago suit includes: IBT Local 301 and its President Robert Barnes; IBT Local 705, its Secretary–Treasurer Daniel Ligurotis and President Donald Heim; IBT Local 726 and its Secretary–Treasurer C.S. Spranzo; IBT Local 734 and its President Robert N. Meidel; and IBT Local 781 and its President Joseph Bernstein.

2. This dispute really centers around the portion of the October 18 Opinion which interpreted the scope of the duties of the Election Officer pursuant to ¶ 12(D) of the Consent Decree. Summarily, the October 18 Opinion found that the phrase "the Election Officer shall 'supervise' the IBT election ... in 1991" meant that the Election Officer had broad powers to institute meaningful electoral reforms. *See* October 18 Opinion.

3. The Government introduced the following evidence into the record. First, a series of 13 exhibits ("Gx"); (1) The Consent Decree; (2) The October 18 Opinion; (3) the November 2 Memorandum and Order of this Court; (4) The original summons and complaint in *IBT Local 301 et. al. v. Holland,* 89 Civ. 8577 (N.D.Ill); (5) The first Amended Complaint in the Chicago lawsuit; (6) the proposed second amended complaint in the Chicago lawsuit; (7) the motion for the Chicago Court's acceptance of the proposed second amended complaint; (8) the Constitution and Bylaws of IBT Local 705; (9) the Bylaws of IBT Joint–Council 25; (10) the Bylaws of the Central Conference of Teamsters; (11) The IBT Roster of subordinate entities and affiliates; (13) the IBT Constitution; (14) the Declaration of Chris M. Pederson. Second, the Government presented the testimony of John Bernard McCormick (the "McCormick testimony"). In addition, the Government introduced a picture of Daniel Ligurotis at a demonstration against the Teamsters for a Democratic Union.

4. The Central Conference of Teamsters is an intermediate umbrella organization consisting of IBT Locals located in thirteen midwestern states: Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Minnesota, Missouri, Nebraska, North Dakota, Ohio, South Dakota, and Wisconsin. Overall, the Central Conference represents about 500,000 of the IBT's 1.6 million members.

President of IBT Joint Council 25,[5] and the Secretary–Treasurer of IBT Local 705 in Chicago. *See* McCormick testimony, Tr. at 14–15; Gx. 8 at 8(A); Gx. 9 at § 1.01; Gx. 10 at § 1.1.

Daniel Ligurotis was a defendant in the Government's original suit against the IBT and the members of its GEB, and ultimately signed the Consent Decree which voluntarily settled that suit. Gx. 1 at 31. Further, ¶ E.10 of the Consent Decree permanently enjoins Daniel Ligurotis from "obstructing or otherwise interfering with the work of the court-appointed officers." Gx. 1 at ¶ E.10. The defendant in the Chicago suit, Michael Holland, is one of the three Court Officers, the Election Officer. *Id.* at ¶ F.12.

The Consent Decree vests this Court with "exclusive jurisdiction to decide any and all issues relating to the [Independent] Administrator's actions or authority pursuant to this order." Gx. 1 at ¶ K.19. The Independent Administrator is authorized to make applications to this Court on behalf of the other two Court Officers. *Id.* at ¶ F.12(i). On September 29, 1989, the Independent Administrator filed Application II after a request by the Election Officer to seek clarification from this Court as to the scope of his duties under the Consent Decree. In response to Application II by the Independent Administrator, this Court issued the October 18 Opinion delineating,

among other things, the scope of duties of the Election Officer. Gx. 2. This Court held that parties intended "supervise" as used in ¶ F.12(ix) to vest the Election Officer with a broad mandate to supervise and reform the IBT electoral process, even at the Local level.[6]

In response to Application III by the Independent Administrator, this Court issued a Memorandum and Order dated November 2, 1989, (the "November 2 Opinion") which established the ability of the Independent Administrator to hear charges against two IBT members, Harold Friedman and Anthony Hughes. In the November 2 Opinion, this Court held that the International IBT entered into the Consent Decree as the representative of the IBT rank and file, intended to represent the membership during the litigation, and entered into the Consent Decree as being in the interest of its members.[7] November 2 Opinion (Gx. 3) at 12–15.

Testimony and affidavit established that at an October 19, 1989 membership meeting of Local 705, Ligurotis informed the membership that he intended to file a lawsuit to curb the power of the Election Officer. McCormick testimony, Tr. at 19–20. He also told the membership that he vocalized his displeasure with the Election Officer's duties to IBT General President McCarthy.[8] *Id.* at 20.

---

**5.** The IBT Joint Council 25 is an intermediate organization situated between the Central Conference and the Locals. All plaintiff IBT Locals in the Chicago suit are members of Joint Council 25.

**6.** The October 18 Opinion delineated the Election Officer's duties as including the following: "... promulgating electoral rules and procedures for the IBT nomination and election; to conduct an educational program aimed at the IBT membership, to actively supervise, direct and oversee the campaigning of candidates, to institute absentee voting procedures, and certify all elections. The Election Officer shall have the authority to carry out these actions over any and all facets of the IBT electoral process up to and including the 1991 election for International Officers.

Further, I find that it is within the scope of the duties of the Election Officer to take any further reasonable actions necessary to carry out his duties as the Election Officer and ensure

fair elections for the IBT membership." October 18 Opinion at 9.

**7.** The most relevant portion of the November 2 Opinion reads as follows: "The International IBT, as the elective and administrative leadership of the IBT membership, litigated the suit and entered into the Consent Decree as the representative of its membership and considered the Consent Decree consonant with its member's interests. In fact, the only logical purpose for the existence of the International IBT is to represent and protect its constituent members, including representing the IBT rank and file as a whole in lawsuits.

The defendant International IBT intended to represent the entire membership, both in the original litigation, and later in the implementation of the Consent Decree." November 2 Opinion at 14.

**8.** McCormick testified that Ligurotis said "I told [IBT General President] McCarthy I'm not going

At the next Local 705 membership meeting on November 16, 1989, Ligurotis informed the membership of his intention to file the Chicago suit the next day. *Id.* at 22, Gx. 14, ¶ 7. Ligurotis told the membership he felt the Election Officer was "overstepping his bounds," that "we're not getting a fair shake in New York," and then declared "fuck the Government—they're not going to get this union away from me!" *Id.* Ligurotis further announced part of his litigation strategy, that if the Chicago lawsuit "is drug <sic> out of here by Edelstein, I'm going to drop the suit." McCormick testimony, Tr. at 22.

On November 17, 1989, the Chicago lawsuit was filed in the United States District Court for the Northern District of Illinois.[9] All of the plaintiff locals are members of IBT Joint Council 25, (Gx. 11) and the IBT Central Conference. Daniel Ligurotis was a named plaintiff. Gx. 4. The sole defendant in the Chicago suit is Election Officer Michael Holland. Gx. 4.

In sum, the Chicago suit seeks a determination from Judge Conlon that ¶ F.12 (D)(ii) of the Consent Decree as interpreted by the October 18 Opinion which delineates the scope of duties of the Election Officer violates the rights of the plaintiffs in the Chicago suit under the IBT Constitution and local union bylaws. Gx. 4 at Count I ¶¶ 15–17, Count II ¶¶ 16–19. The Chicago suit seeks

> an order relieving them from application or enforcement by the defendant of Paragraph 12D of the Consent Order with respect to defendant's conduct or participation in the conduct of the plaintiffs Local Unions' nominations and elections of delegates to the 1991 IBT convention
> . . .

*Id.* at 22.

On November 27, 1989, this Court issued an Order pursuant to the All Writs Act, 28 U.S.C. § 1651 and its inherent equity power, enjoining the plaintiffs in the Chicago suit from taking any further action in connection with that suit. This order allowed the plaintiffs to respond to motions by the defendant Election Officer or enter a dismissal pursuant to F.R.C.P. Rule 41(a)(1)(i).

On November 29, 1989, the plaintiffs in the Chicago suit filed an amended complaint which dropped Ligurotis as a plaintiff. In addition, this amended complaint also withdrew counts which involved Ligurotis or, in the Chicago plaintiff's view, had any nexus to the Southern District of New York. Gx. 5. On November 30, 1989, the Chicago plaintiffs moved for leave to file a second amended complaint. Gx. 6., Gx. 7.

On December 8, 1989, this Court held the factual hearing described earlier where Ligurotis waived his appearance, and through his attorney waived his right to present evidence. Ligurotis declined to dispute the facts as presented by the Government in testimony, affidavits, and exhibits. Counsel for Ligurotis contested whether the facts as stated constituted contempt, and disputed the penalties sought by the Government.

The Chicago suit may only be seen as an effort to subvert the Consent Decree and circumvent the October 18 Opinion and November 2 Opinion. Further, the suit represents an attempt to interfere with the work of the Election Officer, and seeks to prevent the Election Officer from effectuating his duties as spelled out by the Consent Decree and the rulings of this Court. The legal issues in contention in Chicago suit are essentially the same as those decided by opinions of this Court.

The evidence further indicates that Daniel Ligurotis was the principal instigator of the Chicago lawsuit. He announced his intention to file the suit to the Local 705 membership, told IBT General President William McCarthy of his intentions, and prophesied the exact date of its filing. Further, the complaint was signed by Sherman Carmell, Esq., Mr. Ligurotis' personal

---

to go along with any of this shit. Nobody's going to come up and tell me how to run my locals." *Id.* at 20.

**9.** The specifics of the Chicago suit are fully set forth earlier in this opinion.

attorney in this action.[10]

In addition to his role in the filing of the lawsuit, the evidence also indicates that Mr. Ligurotis engineered the instigation of this lawsuit in order to undermine the rulings of this Court. The litigation seems a blatant attempt to forum shop for relief from rulings he perceives as adverse. That Ligurotis asserts that the suit would be dropped if transferred before me further confirms that this suit is calculated to seek redress from a different forum.

The evidence also demonstrates that Daniel Ligurotis has the singular power to force the withdrawal of this suit. This fact is confirmed by virtue of his position as head of the Central Conference of Teamsters. Article 13 of the Central Conference Bylaws provides that Ligurotis, as the Chairman of the Policy Committee, "is authorized to instruct the Legal Department to supervise the conduct of any litigation which may affect the Conference as a whole, or other Local Unions affiliated with the Conference, *and to determine whether litigation shall be continued or abandoned.*" (emphasis added.) Undoubtedly, Ligurotis could effectuate the withdrawal of this lawsuit by virtue of this power alone. Ligurotis is also the International Director of the Central Conference of Teamsters, an International Vice–President and member of the GEB, President of Joint Council 25, and President of Local 705. Ligurotis is the most powerful Teamster in Chicago, in Illinois, indeed in the whole midwestern United States.

*Discussion*

■■■ This Court is statutorily empowered to impose the sanction of civil contempt under 18 U.S.C. § 401(3). That statute reads in relevant terms:

A court of the United States shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none others, as—(3) disobedience or resistance to its lawful writ, process, order, rule, decree or command.

Acts of disobedience to clear and unambiguous orders of the Court constitute contempt of court. *In re Weiss*, 703 F.2d 653, 661 (2d. Cir.1983). A court has the power to punish such acts. If the court seeks to punish the contemnor it may treat the conduct as civil contempt. *Id.* Further, this Court may impose contempt penalties for acts or actions that contravene orders of the Court as embodied in a Consent Decree. *See U.S. v. City of Yonkers*, 856 F.2d 444, 451–54 (2d. Cir.1988).

The Government in this case seeks a finding that signee Daniel Ligurotis is in contempt of the Consent Decree, specifically the permanent injunction against interference with the work of the Court Officers at ¶ E.10. The Government seeks this remedy through their order to Show Cause of November 22, 1989. In this circuit, the standards for holding a person charged with civil contempt require notice of the allegation, the right to counsel, and a hearing at which the plaintiff bears the burden of proof and the defendant has an opportunity to respond. *U.S. v. City of Yonkers*, 856 F.2d 444, 452 (2d. Cir.1988).

All of the procedural requirements for civil contempt were met in this situation. In this motion for contempt, the Order to Show Cause of November 22 required Ligurotis to appear at a hearing on November 27. By that time, Mr. Ligurotis had discussed the matter with his Chicago counsel [11] and subsequently retained local counsel in New York to represent him in this matter. A further conference was held December 6, 1989, specifically to discuss matters relating to the contempt charges against Mr. Ligurotis. At the December 6 hearing, a further factual hearing on the charges was scheduled for December 8, 1989. At the December 8 hearing, Ligurotis waived his right to appear and

---

**10.** Mr. Ligurotis has been represented in the proceedings before this Court by Mr. Jordan Stanzler, Esq. of the firm Anderson, Kill, Olick & Oshinsky, of New York City.

**11.** Sherman Carmell, who the Government submitted was Ligurotis' personal attorney in Chicago, called my chambers after receiving notice of the signed Order to Show Cause asking me to give Ligurotis extra time to appear given the Thanksgiving holiday.

declined to offer factual proof to refute the evidence submitted by the Government. These events demonstrate that Ligurotis was given notice of the charges and every opportunity to respond to these allegations.

■ When an individual is to be held in contempt of court for the violation of an order of the Court, the order must be "clear and unambiguous." *N.Y. State Nat. Organization for Women v. Terry*, 697 F.Supp. 1324, 1331 (S.D.N.Y.1988). Further, the movant must prove this by clear and convincing evidence. *Id.* at 1331. The terms of the Consent Decree are sufficiently clear to give a person of ordinary intelligence fair notice of what conduct is prohibited. *See id.* The purpose of civil contempt is not to punish the civil contemnor, but instead should be devised to coerce compliance with the Court's orders or to compensate the moving party for losses caused by the contempt. *U.S. v. City of Yonkers, supra* at 450–51. Although wilfulness is not a necessary element of contempt, *see McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949), it is relevant to the remedy to be fashioned for that contempt. *See Vuitton et Fils, S.A. v. Carousel Handbags*, 592 F.2d 126, 130–31 (2d. Cir.1979). In achieving that end, a district court is afforded broad discretion. *See id.* at 130.

■ By virtue of his having caused, supported, and been a named plaintiff in the filed Chicago suit and not effectuating its withdrawal, Daniel Ligurotis is in civil contempt of the permanent injunction in the Consent Decree which enjoins obstructing or interfering with the work of the Court Officers. Ligurotis' act of contempt seems deliberate, willful, intentional, and shows blatant disregard for his obligations under the Consent Decree he signed and the Court that enforces its provisions.

The evidence is crystalline that Ligurotis violated the order as embodied in the Consent Decree. The injunction in the Consent Decree against interfering with the work of the Court Officers could not be clearer. The Chicago suit is a blatant attempt to seek redress from an alternative forum as to the nature of the duties of the Election Officer. Accordingly, I find the Government has met its burden of proof and demonstrated by clear and convincing evidence that Ligurotis is in civil contempt of court in violation of 18 U.S.C. § 401(3).

This act of contempt by Ligurotis has caused the defendant Election Officer, the Independent Administrator, and the Government to incur substantial time and expense responding to the lawsuit. In addition, this Court has expended considerable resources as a result of this litigation as well. The Election Officer has responded to this lawsuit, and filed a motion. The Independent Administrator has submitted a lengthy affidavit in support of the motion of the Election Officer. The Government has expended substantial resources in connection with its motions in this suit.

■ The fees and expenses of the Election Officer, Independent Administrator, and Government are fair, reasonable, and an accurate representation of the costs the respective entities have incurred in response to the Chicago suit. The schedule of fees, as set forth in the Declaration of Edward T. Ferguson, III (executed on December 11, 1989) are reasonable and necessary. Such response is particularly appropriate given the special nature of this litigation, since there is a limited amount of time for the Court Officers to conduct their important work.

Further, I find that the further sanction of an escalating series of fines, starting at $125, and doubling daily until the Chicago suit is withdrawn, is necessary to coerce Ligurotis to comply with the Consent Order. Such a schedule of fines is not unprecedented, and has been held to be coercive rather than punitive in nature. *U.S. v. City of Yonkers, supra*, at 451. In the Yonkers situation, Judge Sand imposed a schedule of doubling fines in order to coerce elements in the Yonkers city government to comply with the provisions of the consent decree settling that case. The Second Circuit affirmed the fines, holding that if the alleged contemnors are afforded appropriate procedural opportunities to respond, then the fines are an appropriate

means to coerce compliance with the provisions of the consent decree. *Id.*

In this instance, Ligurotis may avoid any penalty beyond compensation for expended costs by exercising the power within his discretion and causing the withdrawal of the Chicago suit. Further, even if he should equivocate about withdrawing the suit, the fines will still be sufficiently small so that he could easily pay them. Only if he absolutely ignores this order and allows the fines to escalate will they reach the imposed cap of $512,000. This ceiling will be reached on the thirteenth day.

Accordingly, pursuant to the authority vested under the All Writs Act, 28 U.S.C. 1651, this Court's inherent equity power, and its power under 18 U.S.C. § 401(3), it is hereby ordered that

1. Daniel Ligurotis is in civil contempt of the permanent injunction at ¶ E.10 of the Consent Decree, and shall have until 5:00 p.m., C.S.T., on Thursday, December 14, 1989, to cause the withdrawal with prejudice of all counts of the lawsuit captioned *Chauffeurs, Helpers & Teamsters Local 301, et al. v. Holland,* 89 Civ. 8577 (N.D. Ill.) (SBC) and thereby relieve himself of contempt; and

2. That in the event the Chicago lawsuit is not withdrawn by 5:00 p.m., C.S.T. on Thursday, December 14, 1989, then beginning on Friday, December 15, Daniel Ligurotis shall pay a fine out of his own funds. This fine will initially be set at $125 on Friday, December 15, 1989, and shall double daily until such time as he causes the withdrawal with prejudice of the Chicago suit. This fine shall not exceed $512,000; and

3. That within one week of today, December 12, 1989, or by December 19, 1989, Daniel Ligurotis shall pay out of his own funds the following amounts: $7,821.25 to compensate the Election Officer, Michael Holland, $5,819.00 to compensate the Independent Administrator, and $31,261.47 to the United States of America; and

4. That a copy of this Order shall be prominently posted forthwith at the headquarters of IBT Local 705, in all places where the leadership of Local 705 ordinarily posts notices to the membership, and that a copy of this order be provided to all members of IBT Locals 301, 705, 726, 734 and 781 that are plaintiffs in the Chicago suit upon request.

So Ordered.