Christopher MASTROVINCENZO (a.k.a. "Mastro"), and Kevin Santos (a.k.a. "NAC" or "NAK"), Plaintiffs,

v.

The CITY OF NEW YORK; Michael R. Bloomberg, Mayor; the New York City Department of Consumer Affairs; Commissioner Gretchen Dykstra; the New York City Police Department; Commissioner Raymond W. Kelly; the Department of Parks and Recreation of the City of New York; and Commissioner Adrian Benepe, Respondents.

No. 04 Civ.412 VM.

United States District Court, S.D. New York.

Oct. 21, 2004.

Andrew David Kaizer, Douglas Lasdon, New York City, for Plaintiffs.

### *DECISION AND ORDER*

MARRERO, District Judge.

Plaintiffs Christopher Mastrovincenzo ("Mastrovincenzo") and Kevin Santos

("Santos") paint hats and other items of clothing and sell them to the general public, primarily in Manhattan, from a sidewalk table. Following Mastrovincenzo's two arrests in 2003 for selling merchandise on the streets without a license from defendant City of New York (the "City") in violation of the General Vendors Law, New York City Administrative Code ("NYCAC") § 20–452 *et seq.*, Mastrovincenzo filed suit against the City on the grounds that the items he produces and sells are expressive works of art protected by the First Amendment, and therefore that he should not need a license to offer them for sale on a public street. By Decision and Order dated April 6, 2004 (the "Order"), the Court issued a preliminary injunction in this case to prevent the enforcement of NYCAC § 20–453 against Mastrovincenzo and Santos pending the final resolution of the merits of this litigation. *See Mastrovincenzo v. City of New York,* 313 F.Supp.2d 280 (S.D.N.Y.2004).[1] Mastrovincenzo was arrested again for vending without a license in Times Square on July 7, 2004. The Court then held a hearing on September 9, 2004, at which the City and the principal officials involved in the arrest were ordered to show cause why they should not be held in contempt of court.

## I. *BACKGROUND*

At the hearing, Lieutenant Daniel Albano ("Albano"), an attorney in the City's Police Department's ("NYPD") legal bureau, testified as to the steps he took to comply with the Court's preliminary injunction. Albano became aware of the Order immediately after it was issued, and in response he called Lieutenant Robert D'Onofrio ("D'Onofrio"), who is in charge of the NYPD Manhattan South Borough Peddler Task Force ("PTF"). The PTF takes primary responsibility for peddler enforcement in Manhattan from 59th Street south to the harbor. Albano, who said he had heard of Mastrovincenzo from the latter's earlier incidents with the police elsewhere in Manhattan over the same issue, thought that officers in the PTF unit would be the most likely NYPD officers to encounter Mastrovincenzo in the future. However, there is also a separate NYPD peddler squad within the Midtown South Precinct, though that precinct is among those covered by the Manhattan South Borough command. Albano did not notify the Midtown South peddler unit, explaining that he mistakenly believed that Mastrovincenzo operated only in lower Manhattan's 6th Precinct. In fact, Mastrovincenzo at times sold his art in Times Square, which is located within the Midtown South Precinct.

On June 29, 2004, Mastrovincenzo was vending his artwork in Times Square and was asked by NYPD Officer Michael Frasco ("Frasco") to move his table, primarily because it was close to a pedestrian crossing. Frasco belonged to the Midtown South peddler squad, not the PTF, and testified that he was not aware of the Court's Order. Mastrovincenzo informed Frasco about the preliminary injunction barring his arrest for vending without a license, but he nonetheless moved his table because he agreed that he may have been blocking the sidewalk, in violation of portions of the vendor law that apply to all vendors, whether licensed or exempt from the regulations. Mastrovincenzo testified that he showed Frasco a binder he carried which contained a copy of the Court's Order, as well as some press articles about it. Frasco denied having seen a copy of the Order among the papers Mastrovincenzo presented to him. Mastrovincenzo also then reported the incident to his lawyer,

---

1. The facts of the underlying case are set forth in detail in the preliminary injunction order.

who in turn notified an attorney at the office of the City's Corporation Counsel ("Corporation Counsel"). That attorney contacted Albano and asked him to disseminate information about the injunction to any police personnel whose knowledge of it was necessary to comply with the Order. Albano testified that he called the Commanding Officer of Patrol, Borough Manhattan South and directed him to notify officers in the 1st, 6th, and Midtown South Precincts about the injunction.

One week later, on July 7, 2004, Sergeant Michael Kelly ("Kelly"), Officer Thomas Caramore ("Caramore"), and Frasco, all members of the Midtown South peddler unit, were patrolling the Times Square area, where they encountered Mastrovincenzo at his table. They asked to see his vendor's license. Mastrovincenzo replied that he had a court order allowing him to sell his art without a license, and showed the officers the binder he said he had previously shown to Frasco containing the Order and newspaper clippings about the case, as well as a street vendor newsletter with his picture next to the article. The officers testified that while Mastrovincenzo mentioned the preliminary injunction, he did not show it to them because he did not have a copy with him, a claim Mastrovincenzo disputes. The officers arrested Mastrovincenzo and held him in a jail cell for eight and one-half hours before Albano learned of the arrest and called the precinct to authorize Mastrovincenzo's release.

After the arrest, Albano called the Midtown South Precinct and left a phone message about the injunction for NYPD supervisors, including Kelly. He then called the Midtown South Precinct again to speak with the supervisors in charge of the day and evening peddler units to ensure that they knew about the Order. On July 23, 2004, Albano also issued an NYPD FIN-EST Message to all commands citywide that incorporated a provision that Mastrovincenzo's artwork (paintings on hats and clothing) would qualify within a definition listing items protected by the First Amendment and exempt from vendor license requirements.

Albano blamed the first breakdown in communications on the PTF's failure to inform other smaller peddler units run by individual precincts in Manhattan. The next compliance failure occurred after Mastrovincenzo's encounter with Frasco on June 29. Albano could not explain exactly why his request to spread information about the injunction to Manhattan South officers was not carried out. This lapse led to Mastrovincenzo's arrest on July 7, four months after the Order had been issued.

## II. STANDARD OF REVIEW

A court may hold a party in civil contempt for failure to comply with a court order only where: (1) the order is "clear and unambiguous;" (2) proof of noncompliance is "clear and convincing;" and (3) the alleged contemnor has not been "reasonably diligent" in attempting to comply with the order. *United States v. Local 1804–1 Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir.1995). The party urging contempt bears the initial burden of demonstrating noncompliance by clear and convincing evidence. *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 59 (2d Cir.1984). It is not necessary to show that noncompliance was willful. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *Donovan*, 726 F.2d at 59. The alleged contemnor then bears the burden of demonstrating that its efforts to comply with the order were reasonably diligent. *See Local 1804–1*, 44 F.3d at 1096.

## III. DISCUSSION

The City does not dispute, nor could it, that there was a "clear and unambiguous" preliminary injunction barring NYPD officers from arresting Mastrovincenzo for selling his artwork without a vendor license. Furthermore, proof of noncompliance is "clear and convincing" because Mastrovincenzo was arrested for that offense. The issue here then turns on whether the City and its officers were "reasonably diligent" in attempting to comply with the Order.

Albano's testimony, which the Court credits, demonstrates a measure of good faith and reasonably diligent efforts on his part to inform relevant NYPD officers about the injunction. Albano conceded that a breakdown of communications occurred further down the chain of command that resulted in his instructions not reaching the officers in the Midtown South Precinct's peddler enforcement unit. The Court is persuaded that information failures of this kind do not rise to the level of civil contempt.

The Court certainly does not condone the City's violation of the Order, even if merely by failure to follow up at all pertinent administrative and operational levels. However, should either Mastrovincenzo or Santos be arrested again for vending without a license the items that are the subject of this litigation, the City can no longer claim that it acted with reasonable diligence. One violation of the injunction is enough to put the City on notice that another violation could be considered contempt.

The Court understands that it is unreasonable to place the burden on the vendors claiming legal protection to produce documentation the police would credit, or on officers at the scene to read newspaper clippings or interpret lengthy court orders in the middle of the sidewalk to determine whether or not vendors are protected. To prevent the situation that occurred here from arising again, such communications should originate from and bear the formal approval of the relevant City officials. As a solution to prevent this situation from arising again, the Court suggests that Corporation Counsel, the Department of Consumer Affairs, and the NYPD produce a form of special license or other manner of official authorization, valid during the pendency of litigation, for the benefit of all vendors who are protected by court orders, so that NYPD officers may be presented by the vendor with a document they could recognize and accept as a legitimate interim permit.

Mastrovincenzo urged a finding of civil contempt and requested that the Court impose a monetary penalty upon the City, the proceeds of which should be awarded to him as compensation for the violation of his rights. To be sure, Mastrovincenzo has followed all the proper legal avenues to challenge governmental action and, at least up to this point, he has succeeded through the principal litigation in obtaining a preliminary injunction enabling him to vend his wares without a license and without fear of arrest. The Court therefore emphasizes two points. First, on the record before it, the Court has found that the City and its officers have satisfied the standard of reasonable diligence to avoid civil contempt. Second, nothing in this decision bars Mastrovincenzo from pursuing a separate civil action challenging the basis of his arrest.

Accordingly, for the reasons discussed above, the Court declines to hold respondents in contempt of the Decision and Order dated April 6, 2004.

**SO ORDERED.**