In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1724
IN RE: KIMBALL HILL, INC., et al.,
 Debtors.
 ____________________
FIDELITY AND DEPOSIT COMPANY OF MARYLAND,
 Appellant,

 v.

TRG VENTURE TWO, LLC,
 Appellee.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 1:20-cv-06105 — Ronald A. Guzmán, Judge.
 ____________________

 ARGUED OCTOBER 28, 2022 — DECIDED MARCH 3, 2023
 ____________________

 Before SCUDDER, KIRSCH, and JACKSON-AKIWUMI, Circuit
Judges.
 SCUDDER, Circuit Judge. A bankruptcy court found a credi-
tor, Fidelity and Deposit Company, in clear contempt of its
plan confirmation order and imposed sizeable sanctions of
2 No. 22-1724

$9.5 million. The district court upheld the decision. Fidelity
appeals, seeking to avoid paying the sanctions for its conduct.
Fidelity’s actions arose out of a commercial transaction fol-
lowing complex bankruptcy proceedings that spurred paral-
lel litigation in state court. The bankruptcy court undertook a
careful and detailed analysis in finding Fidelity in contempt
of its order and assessing sanctions based on the costs Fidel-
ity’s conduct caused a third party to incur. Like the district
court, we see no legal or factual error. So we affirm.
 I
 A
 In the early 2000s, Kimball Hill, Inc., entered land devel-
opment agreements with municipalities in Illinois. As part of
these annexation agreements, Kimball Hill contracted sepa-
rately with Fidelity and Deposit Company as a surety to issue
bonds securing performance on the underlying development
obligations. The arrangement was straightforward: in the
event Kimball Hill failed to develop the properties, the mu-
nicipalities could draw on Fidelity’s surety bonds to cover
their losses.
 Fidelity negotiated protections of its own. In exchange for
securing Kimball Hill’s performance, Fidelity required Kim-
ball Hill to indemnify it. This too was a straightforward ar-
rangement: if the municipalities exercised their rights to draw
on Fidelity’s bonds—due to Kimball Hill’s failure to develop
the properties—this separate indemnity agreement bound
Kimball Hill to reimburse Fidelity for its own losses. Kimball
Hill’s indemnity obligations to Fidelity lie at the heart of this
dispute.
No. 22-1724 3

 On April 23, 2008, in the wake of the global financial crisis,
Kimball Hill filed for Chapter 11 relief in bankruptcy court.
At the time of the filing, Kimball Hill had not satisfied its de-
velopment obligations under the annexation agreements.
That reality led the municipalities and Fidelity to file proofs
of claim against Kimball Hill in the Chapter 11 proceeding.
The municipalities based their claims on a breach of the an-
nexation agreements. For its part, Fidelity rooted its claim in
Kimball Hill’s potential liability to the municipalities and, by
extension, to Fidelity for its expected payout on the surety
bonds.
 On March 12, 2009, the bankruptcy court entered an order
confirming Kimball Hill’s plan to liquidate and distribute the
estate. Fidelity participated in the confirmation proceedings
and voted in favor of the plan. By its terms, the confirmation
order released the claims of every party that voted for the
plan, including Fidelity.
 Upon Kimball Hill’s plan confirmation, the bankruptcy
court issued an injunction to enforce the plan and confirma-
tion order. The injunction prohibited entities like Fidelity that
voted for the plan from seeking payment on the claims that
they had agreed to extinguish. The injunction also stated that
the bankruptcy court would retain jurisdiction over disputes
arising in connection with the interpretation and enforcement
of the plan and order.
 The liquidation plan created a trust to administer Kimball
Hill’s estate upon entry of the confirmation order. All of Kim-
ball Hill’s assets went into the trust, “free and clear of any and
all liens, claims, encumbrances and interests.” In 2010 the
Kimball Hill Trust sold its development interests in the mu-
nicipalities’ land to TRG Venture Two LLC. TRG believed that
4 No. 22-1724

it bought the land free and clear of any claims extinguished
by the bankruptcy plan confirmation order.
 B
 Meanwhile, the municipalities wanted to recover for Kim-
ball Hill’s failure to develop the properties. The only way to
do so was to draw on the Fidelity bonds, but the bankruptcy
court’s order enjoined the municipalities from suing Kimball
Hill to legally establish its nonperformance. So the municipal-
ities returned to bankruptcy court and moved for relief from
the order. The bankruptcy court granted the motion and mod-
ified the injunction to allow the municipalities to sue Kimball
Hill, but only to “establish liability, if any, against Kimball
Hill under the Annexation Agreement for the sole purpose of
recovering against the proceeds of the Performance Bonds, if
any.” By 2013 many municipalities successfully established
grounds to recover on the surety bonds and therefore sought
payment from Fidelity.
 Fidelity’s claims against Kimball Hill remained subject to
the bankruptcy court’s order, however. In one of its claims,
Fidelity originally estimated that the bond payouts to the mu-
nicipalities would total $43 million. In 2013, following the
municipalities’ successful liability suits, the Kimball Hill
Trust objected to Fidelity’s $43 million claim. The bankruptcy
court sustained the objection in part and revised the amount
downward to reflect Fidelity’s aggregate payouts to the mu-
nicipalities at that time. The bankruptcy court also reserved
Fidelity’s right to seek upward readjustments to reflect future
payouts, should additional municipalities draw on Fidelity’s
bonds. But outside the bankruptcy proceedings, Fidelity’s
right to recover for its indemnity claims remained extin-
guished by the plan confirmation order.
No. 22-1724 5

 C
 Around the same time, state court litigation was under-
way. The municipalities sued Fidelity in state court to collect
on the surety bonds. In each state court action, Fidelity re-
acted by interpleading TRG on the view that it could enforce
Kimball Hill’s pre-petition indemnity obligations against
TRG as Kimball Hill’s successor. TRG successfully moved to
dismiss each of Fidelity’s interpleader claims, but Fidelity
filed subsequent appeals that brought TRG back into the state
court litigation.
 TRG believed Fidelity’s state court actions were pursued
both in bad faith and in violation of Fidelity’s agreement to
extinguish certain claims under the Chapter 11 confirmation
order. So TRG turned to the bankruptcy court as a new ave-
nue for relief from Fidelity’s claims that TRG must provide
indemnity for the surety payouts to the municipalities. In July
2016 TRG asked the bankruptcy court to enforce the Kimball
Hill plan confirmation order and related injunction against Fi-
delity. TRG argued that Fidelity’s pre-petition claims against
the Kimball Hill Trust—and by extension, TRG—had been ex-
tinguished upon plan confirmation. TRG asked the court not
only to order Fidelity to dismiss the state court claims, but
also to sanction Fidelity for its knowing and intentional viola-
tion of the confirmation order.
 D
 In 2017 the bankruptcy court granted TRG’s motion and
held Fidelity in contempt of the plan confirmation order. The
bankruptcy court concluded that the confirmation order ex-
tinguished Kimball Hill’s pre-petition duty to indemnify Fi-
delity. The court also determined that sanctions were
6 No. 22-1724

warranted because Fidelity knowingly voted to extinguish
these claims but then turned around and pursued them any-
way against TRG. After discovery and a bench trial to assess
damages, the bankruptcy court awarded $9.5 million to TRG,
which included the costs TRG incurred defending itself
against Fidelity’s state court claims seeking indemnity.
 Fidelity appealed to the district court. In 2019, while Fidel-
ity’s appeal was pending, the Supreme Court decided Taggart
v. Lorenzen, 139 S. Ct. 1795 (2019), which changed the standard
for imposing sanctions and finding parties in contempt of
bankruptcy plan confirmation orders. The district court re-
manded to allow the bankruptcy court to reevaluate sanctions
under Taggart’s objective standard. On remand the bank-
ruptcy court reinstated its original contempt findings and re-
imposed the $9.5 million in sanctions against Fidelity. Fidelity
again appealed, and the district court affirmed.
 Fidelity now seeks our review.
 II
 A
 Fidelity first contends that the bankruptcy court lacked ju-
risdiction to interpret and enforce Kimball Hill’s plan confir-
mation order. Not so. “[A] bankruptcy court,” the Supreme
Court has explained, “plainly [has] jurisdiction to interpret
and enforce its own prior orders,” particularly when the court
has “explicitly retained jurisdiction to enforce its injunctions”
as part of the order. Travelers Indem. Co. v. Bailey, 557 U.S. 137,
151 (2009) (citing Local Loan Co. v. Hunt, 292 U.S. 234, 239
(1934)); see also 1 Collier on Bankruptcy ¶ 3.02[7] (16th ed.
2022). This residual jurisdictional authority stems from the
Bankruptcy Code through Title 28, which confers subject
No. 22-1724 7

matter jurisdiction on claims “arising under” and “related to”
bankruptcy proceedings. 28 U.S.C. § 1334(b). Congress’s
grant of jurisdiction extends to creditor conduct within the
scope of a plan confirmation order.
 This case is a textbook example. TRG turned to the bank-
ruptcy court to enjoin Fidelity—a creditor of Kimball Hill—
from pursuing claims extinguished by the plan confirmation
order. Indeed, when TRG initially filed the motion in 2016, the
Kimball Hill Trust had not yet finished distributing assets and
resolving outstanding claims, including Fidelity’s claims for
the amount the municipalities had so far drawn from Fidel-
ity’s bonds. The bankruptcy court retained the authority to
determine whether Fidelity’s claims against TRG were the
same as those Fidelity sought to recover from the Kimball Hill
Trust.
 In contending otherwise, Fidelity conflates a jurisdictional
question with a merits question. The former asks only
whether the bankruptcy court can interpret its own plan con-
firmation order to decide whether Fidelity’s claim against
TRG is one extinguished by the order. The answer is clearly
yes.
 B
 That takes us to the merits. Fidelity insists the bankruptcy
court incorrectly applied Taggart’s objective standard in rein-
stating its contempt order and sanctions. Here, too, we disa-
gree.
 Having taken our own fresh look at Taggart’s objective
standard as it applies to Fidelity’s conduct, we see no errors
with the bankruptcy court’s decision. The bankruptcy court
recognized that TRG, as the moving party, bore the burden of
8 No. 22-1724

showing that there was “no objectively reasonable basis for
concluding that [Fidelity]’s conduct might be lawful under
the [ ] order.” 139 S. Ct. at 1801. When TRG brought evidence
of Fidelity’s “record of continuing and persistent violations”
of the plan confirmation order, the bankruptcy court stood on
solid ground in finding that the firm met its burden under
Taggart. Id. at 1802 (quoting McComb v. Jacksonville Paper Co.,
336 U.S. 187, 192–93 (1949)). The bankruptcy court was then
rightly “justified [in] placing ‘the burden of any uncertainty
in the decree … on [the] shoulders’ of [Fidelity].” Id. (second
and third alterations in original) (quoting McComb, 336 U.S. at
192–93).
 Fidelity begs to differ by suggesting that TRG was not held
to its burden and instead that the bankruptcy court impermis-
sibly imposed a burden of proof on Fidelity. Once again, we
cannot agree. We see nothing indicating that the bankruptcy
court shifted the burden to Fidelity. To the contrary, the bank-
ruptcy court provided Fidelity a full and fair opportunity to
argue that the plan confirmation order was ambiguous and
did not extinguish the indemnity claim Fidelity later pursued
against TRG. That the bankruptcy court rejected Fidelity’s ar-
gument on the merits does not mean that the court failed to
follow Taggart’s objective standard. We see just the opposite:
the bankruptcy court understood and applied Taggart’s teach-
ings.
 We also agree with the bankruptcy court’s conclusion that
there is no “fair ground of doubt” that Fidelity’s actions
amounted to a flagrant violation of the agreed-to terms of
Kimball Hill’s plan confirmation order. Remember what hap-
pened. Fidelity sought to recover pre-petition indemnity lia-
bilities that it believed TRG assumed as the purchaser of
No. 22-1724 9

Kimball Hill’s development properties. In doing so, however,
Fidelity ignored the confirmation order, which, by its terms,
extinguished any rights to recover those liabilities outside of
the bankruptcy proceedings. Pre-petition claims extinguished
upon plan confirmation do not spring back into existence
upon post-confirmation asset sales. Indeed, the reason for a
successor-in-interest like TRG to enter such a transaction is
because the Kimball Hill Trust’s assets are being sold “free
and clear” of any pre-petition liabilities.
 Fidelity’s contentions to the contrary border on frivolous.
The bankruptcy court’s plan confirmation order—that Fidel-
ity voluntarily reviewed and approved—was clear and pre-
cise: Kimball Hill’s successors-in-interest were released par-
ties under the plan. This is not a case of unknown third-party
tort victims that were not part of the plan confirmation. See,
e.g., Zerand-Bernal Grp., Inc., v. Cox, 23 F.3d 159, 163 (7th Cir.
1994). The plan order provided that future purchasers of the
Kimball Hill Trust’s assets were expressly contemplated and
released from pre-petition creditors’ claims against Kimball
Hill’s estate.
 Fidelity believes that it has a right to claim indemnity costs
from TRG because the municipalities have been able to en-
force their development agreements against TRG. But TRG’s
obligations to the municipalities are separate from Fidelity’s
pre-petition indemnity claims. Fidelity fails to recognize the
difference between property-based and entity-based claims.
As covenants that run with the land, Kimball Hill’s develop-
ment obligations were part and parcel of the land sale to TRG.
That is why the bankruptcy court determined that Kimball
Hill’s development obligations survived the plan confirma-
tion order. But Kimball Hill’s indemnity obligations to
10 No. 22-1724

Fidelity are entity-based: Kimball Hill agreed to indemnify Fi-
delity in the event the latter paid the surety bonds to the mu-
nicipalities. The fact that the indemnity obligations arose from
the land development deal does not change that fundamental
nature of Fidelity’s claims.
 Fidelity has lost sight of the bigger picture. The firm re-
fuses to accept the consequences of the intervening bank-
ruptcy proceedings on its agreement with Kimball Hill—that
its pre-petition claims stemming from Kimball Hill’s pre-pe-
tition acts are extinguished. Our decision says nothing, how-
ever, of Fidelity’s ability to pursue future claims arising from
post-petition acts. For instance, if TRG violated some new,
post-petition obligation to Fidelity that arose after Kimball
Hill’s Chapter 11 petition, Fidelity could seek to vindicate that
right. But that is not what happened here.
 Given such a knowing, intentional violation of the plan or-
der, we cannot conclude that Fidelity had an objectively rea-
sonable basis to pursue its pre-petition claims against TRG.
The bankruptcy court did not err by finding Fidelity in con-
tempt and imposing $9.5 million in sanctions.
 C
 In its final effort to avoid paying the sanctions, Fidelity ar-
gues that the district court erred in awarding sanctions to
TRG because Fidelity did not proximately cause TRG’s state
court litigation fees. Fidelity instead suggests that TRG, be-
cause it would have had to defend itself against separate
claims brought by the municipalities, did not sustain harm
warranting sanctions against Fidelity.
 Fidelity asks us to ignore reality. The link is crystal clear
between Fidelity’s conduct and TRG’s litigation costs: TRG
No. 22-1724 11

was not a party to the state court litigation until Fidelity inter-
pleaded TRG. And the municipalities that sued TRG after the
interpleader testified that Fidelity’s conduct drove them to
sue. Further, the claims at issue were different—Fidelity
raised indemnity issues and the municipalities raised contract
issues. Fidelity may be right that TRG incurred additional
costs while defending itself against the municipalities’ sepa-
rate contract claims, but that says nothing of Fidelity’s inde-
pendent indemnity claims that TRG also had to defend
against.
 The bankruptcy court correctly examined TRG’s evidence
of its costs arising directly from its efforts to fend off Fidelity’s
indemnity claims. The bankruptcy court then calculated ac-
tual damages incurred in, related to, or as a direct result of
state court lawsuits; the costs incurred in maintaining the
properties during the state court litigation; and the lost value
due to TRG’s delayed ability to sell the properties. The court
made no errors in assessing TRG’s costs at $9.5 million.
 For these reasons, we AFFIRM.